UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DR. ADDAGADA C. RAO,

             Plaintiff,

               v.

WYCKOFF HEIGHTS MEDICAL CENTER, INC.
and RAMON RODRIGUEZ,

             Defendants.

No. 1:14-cv-01936-NGG-SLT

ORAL ARGUMENT REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WYCKOFF HEIGHTS
MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT**

ARNOLD & PORTER KAYE SCHOLER LLP
Susan L. Shin
Maggie C. Maurone
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

*Attorneys for Defendant*
*Wyckoff Heights Medical Center*

February 3, 2017

## TABLE OF CONTENTS

<u>Page</u>

Preliminary Statement.................................................................................................. 1

Statement of Facts..................................................................................................... 2

Argument ................................................................................................................... 4

I.    PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION BECAUSE THERE WAS NO ADVERSE EMPLOYMENT ACTION ....................................... 5

II.   EVEN ASSUMING AN ADVERSE EMPLOYMENT ACTION, SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL OF PLAINTIFF'S FEDERAL DISCRIMINATION CLAIMS ....................................................................................... 9

  A.  Plaintiff Cannot Establish A Prima Facie Case Of National Origin Discrimination And Therefore Count I Should Be Dismissed ................................................................. 9

  B.  Plaintiff Cannot Establish A Prima Facie Case Of Discrimination Based On Race And Therefore Count II Should Be Dismissed............................................................... 15

  C.  No Reasonable Jury Could Find That Plaintiff Was Terminated Because of His Age And Therefore Count III Should Be Dismissed............................................................. 16

  D.  Even Assuming A Prima Facie Case of Discrimination, Plaintiff Adduced No Evidence of Pretext to Counter the Abundant Evidence of Legitimate Nondiscriminatory Reasons for Any Adverse Action ........................................................................................ 17

III.  WYCKOFF IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S NEW YORK STATE AND NEW YORK CITY HUMAN RIGHTS CLAIMS (CLAIMS IV-IX) FOR THE SAME REASONS AS ARTICULATED FOR THE FEDERAL CLAIMS....................... 20

CONCLUSION....................................................................................................... 22

i

**Table of Authorities**

Page(s):

CASES:

*Anderson v. Conboy*,
    156 F.3d 167 (2d Cir. 1998),
    *cert denied*, 526 U.S. 1086,
    *cert. dismissed*, 527 U.S 1030 (1999) ...................................................................................15

*Bickerstaff v. Vassar College*,
    196 F.3d 435 (2d Cir. 1999),
    *cert. denied*, 530 U.S. 1242 (2000) ....................................................................................14, 15

*Brown v. City of Syracuse*,
    673 F.3d 141 (2d Cir. 2012) ..................................................................................................5, 6

*Campbell v. Alliance Nat'l Inc.*,
    107 F. Supp. 2d 234 (S.D.N.Y.2000) ........................................................................................21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................................4

*Chapotkat v. Cty. of Rockland*,
    605 F. App'x 24 (2d Cir. 2015). ........................................................................................16, 17

*Constance v. Pepsi Cola Bottling Co. of N.Y.*,
    No. 03-CV-5009, 2007 WL 2460688 (E.D.N.Y. Aug. 24, 2007) ....................................11, 12

*Del Franco v. N. Y. C. Off-Track Betting Corp.*,
    429 F. Supp. 2d 529 (E.D.N.Y. 2006) ......................................................................................5

*Delaney v. Bank of Am. Corp.*,
    766 F.3d 163 (2d Cir. 2014) (per curiam) ....................................................................16, 17, 18

*Dr. John C. Riggs v. Wyckoff Heights Medical Center, Inc., Ramon Rodriguez,*
    *and Gary Goffner*,
    Index No. 9229/2013 (Kings Co.) ............................................................................................13

*Eatman v. United Parcel Service*,
    194 F. Supp. 2d 256 (S.D.N.Y. 2002) ....................................................................................12

*Ehrbar v. Forest Hills Hosp.*,
    131 F. Supp. 3d 5 (E.D.N.Y. 2015). .......................................................................................15

*Figueroa v. City of New York*,
    No. 06–CV–6277, 2015 WL 1298502 (E.D.N.Y. Mar. 23, 2015) ......................................5, 20

*Freid v. LVI Services, Inc.*,
    500 F. App'x 39 (2d Cir. 2012) ...............................................................................................17

*Gioia v. Forbes Media LLC*,
    501 F. App'x 52 (2d Cir. 2012) .................................................................10

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604 (1993) .................................................................................16

*Henry v. Wyeth Pharm., Inc.*,
    616 F.3d 134 (2d Cir. 2010),
    *cert. denied*, 562 U.S. 1279 (2011) ...............................................10, 13

*Holleman v. Art Crating Inc.*,
    No. 12 Civ. 2719, 2014 WL 4907732 (E.D.N.Y.Sept. 30, 2014) ...................9, 10, 20

*Hyek v. Field Support Servs.*,
    702 F. Supp. 2d 84 (E.D.N.Y. 2010),
    *aff'd*, 461 F. App'x 59 (2d Cir. 2012). .................................................18

*Johnson v. N. Y. C. Bd. of Educ.*,
    No. CV 96–4472 (NGG), 2000 WL 1739308 (E.D.N.Y. Oct. 10, 2000) ............4, 5

*Jones v. City of New York*,
    No. 14-CV-0826, 2015 WL 502227 (E.D.N.Y Feb. 5, 2015) .........................11, 13

*Jowers v. Family Dollar Stores, Inc.*,
    No. 09–CV–2620, 2010 WL 3528978 (S.D.N.Y. Aug. 16, 2010),
    *aff'd*, 455 F. App'x 100 (2d Cir. 2012). .............................................13, 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................4

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .........................................................................5, 16, 20

*McPherson v. N.Y.C. Dep't of Educ.*,
    457 F.3d 211 (2d Cir. 2006) .................................................................20

*Miller v. Praxair, Inc.*,
    408 F. App'x 408 (2d Cir. 2010), *cert. denied*, – U.S. –, 131 S.Ct. 3067 (2011) .................6

*Moore v. Kingsbrook Jewish Med. Ctr.*,
    No. 11-CV-3625, 2013 WL 3968748 (E.D.N.Y. July 30, 2013) .....................14, 19

*Nassry v. St. Luke's Roosevelt Hosp.*,
    No. 1:13-CV-4719-GHW, 2016 WL 1274576 (S.D.N.Y. Mar. 31, 2016) ............14

*Pummell v. Commonwealth Home Fashions, Inc.*,
    No. 02 Civ. 1171(DRH), 2005 WL 11727 (N.D.N.Y. Jan.3, 2005) ...................21

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000)........................................................................18

*Robinson v. Concentra Health Servs., Inc.*,
   781 F.3d 42 (2d Cir. 2015)...........................................................5, 15

*Sethi v. Narod*,
   12 F. Supp. 3d 505 (E.D.N.Y. 2014) ..............................................5, 9

*Singh v. N.Y. State Dep't of Taxation & Fin.*,
   911 F. Supp. 2d 223 (W.D.N.Y. 2012) ...............................................6

*Spiegel v. Schulmann*,
   604 F.3d 72 (2d Cir. 2010)..........................................................5, 20

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993)...................................................................16, 18

*Tillman v. Luray's Travel*,
   137 F. Supp. 3d 315 (E.D.N.Y. 2015) ................................................4

*Timbie v. Eli Lilly & Co.*,
   429 F. App'x 20 (2d Cir. 2011) ........................................................17

*Usherenko v. Bertucci's Corp.*,
   No. 3:05-CV-756, 2006 WL 3791389 (D. Conn. Dec. 21, 2006) .........15

*Velazco v. Columbus Citizens Found.*,
   778 F.3d 409 (2d Cir. 2015)..............................................................20

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*,
   973 F. Supp. 2d 386 (S.D.N.Y. 2013),
   *aff'd*, F. App'x 739 (2d Cir. 2014)......................................................14

*Williams v. N.Y.C. Dep't of Educ.*,
   No. 11 Civ. 6158, 2013 WL 3487613 (S.D.N.Y. July 9, 2013) .............12

## STATUTES AND RULES:

29 U.S.C. § 623(a)(1)........................................................................16

42 U.S.C. § 1981(a) ..........................................................................15

Fed. R. Civ. P. 56(a) ...........................................................................4

Defendant Wyckoff Heights Medical Center ("Wyckoff") submits this memorandum in support of its Motion for Summary Judgment dismissing the Complaint.

## **Preliminary Statement**

On December 30, 2011, Plaintiff,  Dr. A.C. Rao ("Plaintiff" or "Dr. Rao"), wrote a letter to Wyckoff's Chief Medical Officer stating that he "would like to step down as Chairman of Surgery."  Nine days later, on January 8, 2012, Wyckoff's new Chief Executive Officer publicly accepted Plaintiff's resignation and announced the appointment of an Acting Chief of Surgery (incidentally of Indian descent like Dr. Rao).  These undisputed facts were conspicuously omitted from Plaintiff's Complaint, which is entirety predicated on his claim that his employment was wrongfully terminated weeks later, on January 17, 2012, for discriminatory reasons, including his Indian national origin, race and age.

Dr. Rao admits (as he must) that he voluntarily wrote and delivered the December 30, 2011 letter to Wyckoff's Chief Medical Officer; rather, Dr. Rao testified that he did not expect Wyckoff to accept his resignation as quickly as it did.  After Wyckoff's acceptance of Dr. Rao's resignation, the undisputed documentary evidence and Dr. Rao's own allegations show that his actions were nothing more than futile and legally insufficient efforts to reverse the events he himself had instigated and/or simple pretense on his part that such events had not occurred. Wyckoff's acceptance of Plaintiff's voluntary resignation is not an actionable basis for a discrimination claim.  After two years of discovery, Plaintiff has been unable to adduce any evidence raising a genuine issue of material fact as to his resignation or the existence of any adverse employment action before Wyckoff accepted his resignation on January 8, 2012. Summary judgment should be granted on all counts and the Complaint should be dismissed in its entirety because there was no adverse employment action by Wyckoff upon which to base any discrimination claim.  Further, even assuming arguendo an adverse employment action occurred,

Plaintiff has failed to adduce sufficient evidence such that a reasonable jury could find he was discriminated against on the basis of his national origin, race or age.

### Statement of Facts

Dr. Rao was appointed as the Chairman of Wyckoff's Department of Surgery in 1988. Statement By Defendant Wyckoff Heights Medical Center Of Undisputed Material Facts Pursuant To Local Civil Rule 56.1 ("56.1 Statement") ¶ 1 (Shin Decl. Ex. A). During his tenure as Chairman, Dr. Rao also maintained a private practice ("Rao PC"). *Id.* at ¶ 4 (Shin Decl. Ex. D). Many of the general surgeons employed by Wyckoff, including Dr. Percy Erachshaw and Dr. Akella Chendrasekhar, were also employees of the Rao PC. *Id.* at ¶¶ 5-6 (Shin Decl. Exs. D, E).

Ramon Rodriguez was appointed Chief Executive Officer of Wyckoff Heights Medical Center on or about December 23, 2011. *Id.* at ¶ 3 (Shin Decl. Exs. A, C). Shortly thereafter, on December 30, 2011, Dr. Rao submitted a letter to the Chief Medical Officer, Dr. Mounzer Tchelebi, stating that he "would like to step down as Chairman of Surgery." *Id.* at ¶ 7 (Shin Decl. Exs. C, F). Approximately a week later, on January 8, 2012, Mr. Rodriguez publicly accepted Dr. Rao's resignation in an e-mail sent to members of Wyckoff's Board of Trustees and hospital employees. 56.1 Statement ¶¶ 9-11, 13 (Shin Decl. Exs. G, H). In the same e-mail, Mr. Rodriguez announced that he had asked Dr. Rao's colleague, Dr. Chendrasekhar (also of Indian descent), to serve as Acting Chairman of the Department. *Id.* at ¶ 11 (Shin Decl. Ex. G, H).

Despite having sent an e-mail on January 8, 2012 to his secretary about the "bad news" that Dr. Chendrasekhar had been appointed Acting Chair, Dr. Rao attended the Chairman's and Director's Meeting on the following day, January 9, 2012, as though he were still in charge of the Department. *Id.* at ¶¶ 14, 17 (Shin Decl. Exs. C, I, A). Several days later, on January 13, 2012, Mr. Rodriguez wrote an e-mail to the Board of Trustees, which included Dr. Rao,

criticizing it for, among other things, allowing a few doctors, namely Dr. Rao, to control the important revenue production areas, especially Surgery, and for allowing Dr. Rao to use his position on the Board to his advantage and to keep other surgeons out of Wyckoff.  *Id.* at ¶¶ 18-19 (Shin Decl. Ex. J).

On January 15, 2012, one week after accepting Dr. Rao's voluntary resignation, Dr. Chendrasekhar forwarded Mr. Rodriguez an e-mail from one of the chief surgery residents, Dr. Michael Betler.  56.1 Statement ¶ 20 (Shin Decl. Ex. K).  Dr. Betler's e-mail attached a letter with the names of all of the surgery residents ("Surgery Residents Letter") that set forth a series of allegations including, among other things, allegations of misconduct by Dr. Percy Erachshaw that occurred while Dr. Rao was the Chairman of the Department.  *Id.* at ¶ 21 (Shin Decl. Ex. K). The letter also included statements that the reasons the residents had remained silent until then was because of threats by Dr. Erachshaw, that were credited by his close ties to Dr. Rao[1], and that Dr. Rao had seemed to protect and support the actions of Dr. Erachshaw.  *Id.* at ¶¶ 22-23 (Shin Decl. Ex. K).  Mr. Rodriguez responded later the same night, calling the allegations "very disturbing" and stating that there would be an  investigation immediately.  *Id.* at ¶ 24 (Shin Decl. Ex. L).

Less than two days later, Mr. Rodriguez terminated Dr. Erachshaw's employment.  56.1 Statement ¶ 25 (Shin Decl. Ex. M).  Mr. Rodriguez also sent a letter to Dr. Rao to make clear that he was no longer an employee of Wyckoff, having accepted his resignation, and to formalize the separation pursuant to Section 5 of Dr. Rao's Employment Agreement.  *Id.* at ¶¶ 26 (Shin Decl. Exs. B, N); *see also* Rodriguez Tr. 9:11-10:09 ("It's a cancellation of his contract.") (Shin

---

[1] Dr. Rao and Dr. Erachshaw were business partners in the Rao PC and co-owners of Cypress Medical Surgical Services LLP, and Dr. Rao testified that in terms of billing for the private practice, he was "probably [the biggest]."  Rao 3/13/15 Tr. 45:19- 48:24, 62:12-24 (Shin Decl. Ex. D).

Decl. Ex. R).  In a January 29, 2012 e-mail to members of the  Board of Trustees, Mr. Rodriguez expressed his view that "Dr. Rao and Dr. Erachshaw appear to have been a very potent and powerful team[,]" and that Dr. Rao's private practice "served the purpose of enriching him and removing millions of dollars from this hospital for many many years."  56.1 Statement ¶ 27 (Shin Decl. Ex. O).  Dr. Rao continued to serve as a member of Wyckoff's Board of Trustees until at least March 1, 2012.  *Id.* at ¶ 31 (Shin Decl. Ex. A).

<u>Argument</u>

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  *Id.*  "No genuine dispute of material fact exists if 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Tillman v. Luray's Travel*, 137 F. Supp. 3d 315, 352 (E.D.N.Y. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  To defeat summary judgment, the opposing party must do more than simply show that there is "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586 (citations omitted).

"[A]s a general rule, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation.  Even in the employment discrimination context, when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Johnson v. N. Y.*

4

*C. Bd. of Educ.*, No. CV 96–4472 (NGG), 2000 WL 1739308, at *1 (E.D.N.Y. Oct. 10, 2000)

(internal quotations and citations omitted).

## I. PLAINTIFF FAILS TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION BECAUSE THERE WAS NO ADVERSE EMPLOYMENT ACTION

Plaintiff asserts claims against Wyckoff in Claims I - IX of the Complaint for

discrimination based on his Indian national origin, race, and age.  He brings these claims

pursuant to Title VII of the Civil Rights Act (national origin), Section 1981 of the Civil Rights

Act of 1866 (race), the Age Discrimination in Employment Act (age), and the New York State

and New York City Huma Rights Laws (national origin, race and age).  Each of these claims

should be dismissed on summary judgment because he did not suffer an adverse employment

action.

All of Plaintiff's claims are subject to the well-established burden-shifting analysis first

articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  *See, e.g., Sethi*

*v. Narod*, 12 F. Supp. 3d 505, 521-22 (E.D.N.Y. 2014) (Title VII); *Robinson v. Concentra*

*Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (Section 1981); *Del Franco v. N. Y. C. Off-*

*Track Betting Corp.*, 429 F. Supp. 2d 529, 535 (E.D.N.Y. 2006) (ADEA); *Spiegel v. Schulmann*,

604 F.3d 72, 83 (2d Cir. 2010) (NYSHRL); *Figueroa v. City of New York*, No. 06–CV–6277,

2015 WL 1298502, at *6 (E.D.N.Y. Mar. 23, 2015) (NYCHRL).

Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate a prima

facie case of discrimination.  411 U.S. at 802.  To establish a prima facie case of discrimination,

a plaintiff must show that "(1) he belonged to a protected class; (2) he was qualified for the

position he held; (3) he suffered an adverse employment action; and (4) that the adverse

employment action occurred under circumstances giving rise to an inference of discriminatory

intent."  *Sethi*, 12 F. Supp. 3d at 522 (citing *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d

Cir. 2012)).  Plaintiff cannot establish that he suffered an adverse employment action and thus all his claims fail as a matter of law.

Dr. Rao voluntarily resigned.  He wrote and delivered the December 30, 2011 letter to the Chief Medical Officer, Dr. Mounzer Tchelebi, stating that he "would like to step down as Chairman of Surgery[,]" the only position he held under his Employment Agreement.  56.1 Statement ¶¶ 2, 7 (Shin Decl. Exs. B, F).  Dr. Rao testified in his deposition that no one told him to resign at the time he wrote the letter.  56.1 Statement ¶ 8 (Shin Decl. Ex. C).  In an e-mail to all Wyckoff employees dated January 8, 2012, CEO Ramon Rodriguez accepted Dr. Rao's resignation and announced the appointment of Dr. Akella Chendrasekhar as Acting Chairman of the Department of Surgery.  56.1 Statement ¶¶ 9-13 (Shin Decl. Exs. C, G, H).  These material facts are undisputed.  Accordingly, there was no adverse employment action by Wyckoff and each of Dr. Rao's counts of discrimination must fail as a matter of law.  *See, e.g., Singh v. N.Y. State Dep't of Taxation & Fin.*, 911 F. Supp. 2d 223, 234 (W.D.N.Y. 2012) (adverse employment action element is not satisfied when employment action is the result of the plaintiff's voluntary resignation) (citing *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410–11 (2d Cir. 2010), *cert. denied*, ––– U.S. ––––, 131 S.Ct. 3067 (2011) (granting summary judgment).

Plaintiff's discrimination Complaint conspicuously omits any reference to the December 30, 2011 resignation letter, but only makes reference to a "contrived acceptance of [his] 'resignation'" and alleges simply that, as of January 8, 2012, he "had not resigned his position as such, nor had Rao been terminated as such, nor had Rao been notified of his 'resignation' as such."  56.1 Statement ¶ 15-16 (Shin Decl. Ex. A); *see also* Rao 2/12/16 Tr. 49:20-25 ("Q. As of this date -- A. As of that time.  Q. -- no one told you to resign, correct?  A. As of that time no

one told me to resign, no."); Rao 2/12/16 Tr. 52:23-25 ("Q. And it is in fact true nobody had

fired you at this point?  A. That's true.") (Shin Decl. Ex. C).[2]

Confronted with the December 30, 2011 resignation letter at his deposition, Plaintiff

testified that while he intended to "step down as Chairman of Surgery" as stated in the letter, he

did not intend to immediately resign, which to him meant walking out of the hospital, and he had

anticipated that the process to find his replacement would take as long as "a year:"

> A. … The letter clearly says, I would like to step down, as a
> statement.  I did not say I'm resigning as a chairman.  Does it say
> I'm resigning? It does not say I'm resigning.
>
> ….
>
> Q. Is it your position that this document is not a resignation letter?
>
> A. Yes, it is not. …
>
> Q. Okay. In your mind the words, "I would like to step down as
> chairman of surgery," is different from, "I would like to resign as
> chairman of surgery?"
>
> A. I would like to resign is, I'm resigning, leaving.  I would like to
> step down is a process.  I'm not going to hold onto this job next ten
> years. I'm willing to relinquish the thing. Let us do the process.
>
> Q. What is your basis -- why do you believe that the process to
> find a new chairman would take a long time?
>
> A. Chairman of the department is very crucial. Sometimes it may
> take a year to find a proper person, so --
>
> Q. Is that what you had expected?
>
> A. That's right. It may take a year to do, you know. So I'm willing
> to do.  You -- you look any major departments, major things, real

---

[2] Faced with the implications of his December 30, 2011 resignation letter, and his own
deposition testimony, Plaintiff recently intimated in correspondence with the Court that his
resignation might have amounted to a constructive discharge—a claim he never asserted to the
EEOC or alleged in his Complaint.  Wyckoff will oppose any effort by Plaintiff to raise a new
claim at this late stage, which in any event, is antithetical to the allegations in his Complaint and
his deposition testimony that he did not resign.

person to look at it, it takes a long time.  I'm willing to go. It's not like that I'm going to stay next 50 years.  Let us look for a good person. I will be part of the team. That's what I meant.  I did not mean, oh, I'm going to -- resigning and walking out.

Rao 2/12/16 Tr. at 63:06-66:18 (Shin Decl. Ex. C).

Contrary to Rao's expectations, Wyckoff accepted his resignation within days and replaced him with his Indian-American colleague, Dr. Akella Chendrasekhar.  56.1 Statement ¶¶ 11-12 (Shin Decl. Ex. H).  Accordingly, Dr. Rao's true grievance against Wyckoff is not that he was fired; rather, it is that Wyckoff accepted his resignation and replaced him more quickly than he had anticipated and without consulting him:

> Q. Well, as we all know, a replacement was found fairly quickly, correct? . . .
>
> A. Yeah, yeah. Repeat again, please.
>
> Q. There was a replacement as chairman of surgery fairly quickly, correct? It didn't take a long time? Is that your recollection?
>
> A. No, if they replace -- I don't know this is a correct replacement. I don't know if the qualifications were done. I don't know people's license was checked. I don't know the problems were solved.  I don't know the particular replacement there -- the replacement has ability to run a department.  I don't know all the full qualifications are fulfilled.
>
> Q. But it wasn't up to you, Dr. Rao, was it?
>
> A. No, it is up to me also, look through.
>
> Q. Why do you believe it was up to you --
>
> A. No, I mean --
>
> Q. -- if you had stepped down?
>
> A. That's what I said. I'm willing to do, and I'm willing to help. They did not take my help.

Rao 2/12/16 Tr. 66:19 - 67:24 (Shin Decl. Ex. C).

Wyckoff's decision to accept Dr. Rao's voluntary resignation and appoint someone else as Acting Chairman much sooner than Dr. Rao had anticipated and without consulting him does not change the fact, or extinguish the effect, of his voluntary resignation. Based upon the face of the December 30, 2011 letter, there is no genuine issue of material fact that Plaintiff voluntarily resigned. Thus, there was no adverse employment action and Claims I through IX should be dismissed.

## II.   EVEN ASSUMING AN ADVERSE EMPLOYMENT ACTION, SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL OF PLAINTIFF'S FEDERAL DISCRIMINATION CLAIMS

Even assuming *arguendo* an alternate universe where Plaintiff did not resign, where Wyckoff did not accept his resignation, and where the January 17, 2012 letter to Dr. Rao formalizing his separation from Wyckoff constitutes an adverse action, Plaintiff fails to make out the fourth element of a prima facie case of discrimination -- "that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Sethi*, 12 F. Supp. 3d at 522 (granting summary judgment to defendants based on, inter alia, plaintiff's failure to establish circumstances giving rise to an inference of discriminatory intent).

### A.   Plaintiff Cannot Establish A Prima Facie Case Of National Origin Discrimination And Therefore Count I Should Be Dismissed

Plaintiff attempts to support his claim of national origin discrimination (Claim I) based on remarks allegedly made by Mr. Rodriguez that (1) Plaintiff's face looked like an "oyster shell," (2) that he wanted to change the "ethnic culture" at Wyckoff, and (3) that he intended to rid the hospital of a so-called "Indian Mafia" and "House of Arya." Compl. ¶¶ 32-44, 47-48, 53 (Shin Decl. Ex. A). While Mr. Rodriguez denies making these remarks, even if assumed true, they are insufficient to support an inference that Dr. Rao himself was terminated on the basis of his national origin. *See Holleman v. Art Crating Inc.*, No. 12 Civ. 2719, 2014 WL 4907732, at

*27 (E.D.N.Y.Sept. 30, 2014) ("stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination.") (citing *Gioia v. Forbes Media LLC*, 501 F. App'x 52, 55 (2d Cir. 2012)). Further, any inference of discrimination is fatally undermined by the fact that Plaintiff was replaced by another surgeon of Indian national origin.

### 1.      The Alleged Comments Are Not Probative of Discrimination

To determine whether a comment is a stray remark or may be probative of discrimination, courts consider "(1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010) (citations omitted), *cert. denied*, 562 U.S. 1279 (2011). The alleged remarks by Mr. Rodriguez are either not discriminatory, have no nexus to the alleged termination, or both.

### a.      The Term "Oyster Shell" Is Not Discriminatory

Plaintiff provides no objective basis to support his assertion that Mr. Rodriguez's alleged use of the term "oyster shell" is evidence of discrimination based on his Indian national origin. "Courts must carefully distinguish between evidence of discrimination and evidence that gives rise to mere speculation and conjecture." *Holleman*, 2014 WL 4907732, at *27 (internal quotation omitted) (granting summary judgment). "[A] witness's subjective belief that certain evidence reflects discrimination, unsupported by any basis for that belief, is not evidence of discrimination." *Id.* (citation omitted).

The contradiction between Plaintiff's own testimony and the testimony of Dr. Erachshaw—the only other person who claims to have heard Mr. Rodriguez use this term and

who is also of Indian national origin—underscores the subjectivity of Plaintiff's belief.  Plaintiff

testified that he thought the term referred to skin color, but not necessarily Indian origin, *see* Rao

2/12/16 Tr. at 41:18-42:04 ("Q. . . . Do you believe [the term oyster shell] refers to Indian skin

color, you said, yes.  What's your basis for that?  A. I don't know -- Q. I'm sorry -- A. I'm sorry,

I don't know he meant Indian. It clearly mentions my skin color.  I'm dark.  It clearly mentions --

there's a racial quotation there, intention there.  It's a bad bad way to say something else. It's not

flattering me.") (Shin Decl. Ex. C).  In contrast, Dr. Erachshaw testified that it referred to age

and not skin color or national origin.  *See* Erachshaw Tr. 91:5-91:12 ("Q. Do you think that [the

term oyster shell] refers to skin color?  A. No.  Q. Do you think it refers to Indian origin?  A. No.

. . . I think it has to do with the age very specific.") (Shin Decl. Ex. E).

       Courts have rejected a plaintiff's subjective belief that a term or statement is evidence of

discrimination in similar contexts.  In *Jones v. City of New York*, the plaintiff in a Title VII skin

color/national origin case sought to rely on, among other things, comments made by her co-

workers about her weave as evidence of discriminatory intent.  *See Jones*, No. 14-CV-0826,

2015 WL 502227, at *5 (E.D.N.Y Feb. 5, 2015).  The Court found that the alleged comments did

not raise an inference of discriminatory intent, in part, because the plaintiff failed to plead

sufficient facts linking the comments to impermissible color discrimination.  *Id.*  The Court

explained that even though "[plaintiff] may well have subjectively believed that defendants'

comments about her weave were tied to her skin color, that is plainly insufficient."  *Id.*  (granting

motion to dismiss for failure to state a claim) (citations omitted)..

       Similarly, in *Constance v. Pepsi Cola Bottling Co. of N.Y.*, the Court found that the

plaintiff failed to establish a connection between a policy prohibiting dreadlocks and his

Trinidadian national origin because he provided no information that the dreadlocked hairstyle is

an identifiable characteristic of Trinidadians.  *See Constance*, No. 03-CV-5009, 2007 WL

2460688, at *22 (E.D.N.Y. Aug. 24, 2007) (granting summary judgment); s*ee also Eatman v. United Parcel Service*, 194 F. Supp. 2d 256, 265 (S.D.N.Y. 2002) (racially neutral comment denigrating "locked hair" could not reasonably be understood as a reflection of discriminatory animus against black people where there is no objective evidence that the speaker perceived the plaintiff's locked hair as related to his race) (granting summary judgment); *Williams v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 6158, 2013 WL 3487613, at *1 (S.D.N.Y. July 9, 2013) (rejecting plaintiff's contention that the phrase "go get your momma" was "equivalent to a racial epithet" and evidence of "racial animus" based on her personal belief) (recommending summary judgment for defendant).

Dr. Rao has failed to adduce or even allege any facts supporting an objective link between the term oyster shell and his Indian national origin. Accordingly, these remarks are insufficient to support an inference of discriminatory intent.

### b.    The Alleged Ethnic Culture Remark Is Not Discriminatory

Similarly, Mr. Rodriguez's alleged remark that "there is a certain ethnic culture [at Wyckoff] and one of my jobs is to change that[,]" is not objectively discriminatory, and, in any event, has no nexus to the alleged termination. Plaintiff has adduced no evidence that the alleged remark is evidence of discrimination based on Indian national origin. Plaintiff's bald assertion that Mr. Rodriguez was "referring to Rao's national origin and ethnicity" is insufficient, particularly when he does not claim that he heard the alleged comment  Compl. ¶¶ 38-39 (Shin Decl. Ex. A). Further, the only person who claims to have heard this remark, Dr. Erachshaw, testified that Mr. Rodriguez did not refer to Indian ethnic culture. *See* Erachshaw Tr. 97:16 ("Personally he did not say Indian[.]") (Shin Decl. Ex. E).

### c.    Mr. Rodriguez's Other Alleged Comments, Even If Assumed True, Have No Nexus to the Alleged Termination

Plaintiff also relies on alleged "racial comments and/or ethnic slurs" made by Mr. Rodriguez at a "town hall" meeting and to members of the Wyckoff medical staff as proof of discriminatory intent.  Compl. ¶¶ 46-48 (Shin Decl. Ex. A).  Plaintiff's evidence concerning these remarks comes from the testimony of Dr. John Riggs, who asserts that Mr. Rodriguez made comments that "there were too many white people at the hospital," and "that he intended to rid the hospital of a so-called 'Indian Mafia' and 'House of Arya.'"  Affidavit of Dr. John Riggs ¶ 4 (Shin Decl. Ex. Q).[3]  Even assuming for purposes of this motion that Mr. Rodriguez made these comments, and that the comments are derogatory towards individuals of Indian national origin, Plaintiff has failed to adduce any evidence, or even allege any facts, that connect Mr. Rodriguez's alleged "ethnic slurs" to his own alleged termination of employment.

"Comments can support the necessary inference of discriminatory intent if the plaintiff 'can establish a nexus between the alleged discriminatory remarks and the defendant's decision to terminate the plaintiff's employment.'"  *Jones*, 2015 WL 502227, at *4.  However, "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination[.]"  *Henry*, 616 F.3d  at 149 (citation omitted).  Indeed, "'[o]nly where decision-makers repeatedly make comments that draw a direct link between a plaintiff's membership in a protected class and an adverse employment action can inference of discriminatory animus be drawn.'"  *Jowers v. Family Dollar Stores, Inc.*, No. 09–CV–2620, 2010 WL 3528978, at *3 (S.D.N.Y. Aug. 16, 2010) (granting summary judgment)

---

[3] This evidence is undermined by that fact that Dr. Riggs is also suing Wyckoff, claiming, inter alia, that his employment was terminated in retaliation for complaining about the same alleged discriminatory conduct.  *See Dr. John C. Riggs v. Wyckoff Heights Medical Center, Inc., Ramon Rodriguez, and Gary Goffner*, Index No.  9229/2013 (Kings Co.).

(citation omitted), *aff'd*, 455 F. App'x 100 (2d Cir. 2012); *see also Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 398-99 (S.D.N.Y. 2013), *aff'd*, F. App'x 739 (2d Cir. 2014) (while a reasonable juror could view the Assistant Superintendent's comments that the plaintiff sounded "just like Aunt Jemima" and "sound[ed] like [she] was down on the plantation" as racially discriminatory, they were insufficient to support a prima facie case where "there is no evidence that the comments were related to the decision-making process"); *Nassry v. St. Luke's Roosevelt Hosp.*, No. 1:13-CV-4719-GHW, 2016 WL 1274576, at *7 (S.D.N.Y. Mar. 31, 2016) (even if reasonable jury could construe remarks as offensive, oblique remarks that were "completely divorced" from the decision-making process were stray remarks and insufficient to show animus).

Here, Plaintiff has not presented any evidence or alleged facts that link Mr. Rodriguez's alleged remarks to his alleged termination of employment.  As such, these remarks are insufficient to support a finding of discriminatory intent.

### 2.    Dr. Rao Was Replaced by Another Surgeon of Indian Origin

Plaintiff's argument that he was discriminated against on the basis of his national origin is further undermined by the undisputed fact that the person appointed to be Acting Chairman of the Department of Surgery following Dr. Rao's resignation was Dr. Akella Chendrasekhar, who is also of Indian national origin.  *See Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *10 (E.D.N.Y. July 30, 2013) (citation omitted) (fact that plaintiff was replaced by two people of same national origin and race undermined any inference of racial or national origin animus); 56.1 Statement ¶¶ 11-12 (Shin Decl. Ex. C).

Taking into account the totality of the evidence, Plaintiff has failed to present sufficient admissible evidence that can "reasonably and logically give rise to an inference of discrimination under all of the circumstances." *Bickerstaff v. Vassar College*, 196 F.3d 435, 448  (2d Cir. 1999),

*cert. denied*, 530 U.S. 1242 (2000); *see also Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 19-21 (E.D.N.Y. 2015) (collecting cases).  As such, summary judgment in favor of Wyckoff is warranted on Plaintiff's Title VII claim.

> **B.    Plaintiff Cannot Establish A Prima Facie Case Of Discrimination Based On Race And Therefore Count II Should Be Dismissed**

Section 1981 of the Civil Rights Act of 1866 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). "'This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment . . . .'"  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (citation omitted).  Except for certain differences not applicable here, "the same 'core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . .'"  *Id.*  Under the statute, race encompasses discrimination based on ancestry or ethnic characteristics, but not national origin. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998), *cert denied*, 526 U.S. 1086, and *cert. dismissed*, 527 U.S 1030 (1999); *Usherenko v. Bertucci's Corp.*, No. 3:05-CV-756, 2006 WL 3791389, at *6 (D. Conn. Dec. 21, 2006) (*sua sponte* dismissing Section 1981 claims based on national origin).

Plaintiff has failed to state a prima face case of race discrimination because his sole evidence of race discrimination is the alleged use of the term "oyster shell" by Mr. Rodriguez. For all of the reasons discussed, *supra* pp. 10-12, Plaintiff's unreasonable subjective belief that the term oyster shell referred to skin color is insufficient to show discriminatory intent as a matter of law.  Thus, summary judgment should be granted to Wyckoff on this claim.

**C.     No Reasonable Jury Could Find That Plaintiff Was Terminated Because of His Age And Therefore Count III Should Be Dismissed**

The Age Discrimination in Employment Act (ADEA) prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). "The ADEA aims to prevent adverse employment decisions grounded in 'inaccurate and stigmatizing stereotypes' about older workers' 'productivity and competence.'" *Chapotkat v. Cty. of Rockland*, 605 F. App'x 24, 26 (2d Cir. 2015) (affirming summary judgment) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). When evaluating a plaintiff's claim under the ADEA, courts apply the three-step *McDonnell Douglas* framework. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (per curiam) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-10 (1993)).

Plaintiff's evidence of age discrimination includes the same oyster shell comment that Plaintiff relies on for national origin and race discrimination, as well as Plaintiff's testimony that during a meeting on or about January 3, 2012 Mr. Rodriguez allegedly told him "You're old. I want you out." Compl. ¶ 43 (Shin Decl. Ex. A). The alleged oyster shell comment cannot be used as evidence of age discrimination when Plaintiff himself testified that it did not refer to his age. Rao 2/12/2016 Tr. at 40:03-04 (Q. Do you believe ["oyster shell"] refers to age? A. No, I believe my skin color.") (Shin Decl. Ex. C). Even if the Court finds that Plaintiff makes out a prima facie case of age discrimination, the proffered evidence is insufficient to show that age was the but-for cause of his termination.

To meet his ultimate burden under the ADEA, Plaintiff must show that "the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find .... that age was the 'but-for' cause of the challenged adverse employment action." *Delaney*, 766 F.3d at 168 (internal

quotation marks and citations omitted).  That age was a "but for cause" does not mean "that age was the employers [sic] only consideration, but rather that the adverse employment action would not have occurred without it." *Id.* at 169 (citations omitted).  Considering the evidence as a whole, including contemporaneous evidence of legitimate reasons for Plaintiff's termination discussed *infra* pp. 18-20, the single alleged comment is insufficient to create a genuine issue as to whether age was the "but-for" cause of the alleged termination.  *See Chapotkat*, 605 F. App'x at 26 (citation omitted) (affirming summary judgment when, considered as a whole, evidence was insufficient to raise genuine issue that age was but-for cause of employment decision).

The Second Circuit has affirmed grants of summary judgment in similar cases.  In *Timbie v. Eli Lilly & Co.*,  the Court found that a single, "facially age-based" remark, "even if probative" was insufficient to allow plaintiff to carry his burden of showing age-discrimination was the "but-for" cause of the adverse employment decision.  *Timbie*, 429 F. App'x 20, 24 (2d Cir. 2011).  Similarly, in *Freid v. LVI Services, Inc.*, the Second Circuit affirmed an award of summary judgment in favor of the employer despite evidence of a remark made by the CEO concerning the plaintiff's age in the context of his job duties.  500 F. App'x 39, 41 (2d Cir. 2012).  The Court held that while the remark could "bear some weight in demonstrating discriminatory bias,"  the plaintiff's burden "required him to show more than possible age bias[,]" which the Court found he could not do in light of the evidence of the employer's legitimate non-discriminatory reasons for his termination.  *Id.*

### D.   Even Assuming A Prima Facie Case of Discrimination, Plaintiff Adduced No Evidence of Pretext to Counter the Abundant Evidence of Legitimate Nondiscriminatory Reasons for Any Adverse Action

Plaintiff has failed to meet his burden of setting forth a prima facie case of discrimination.  But even assuming that the Court finds that this burden is met, summary judgment should still be granted on all Plaintiff's discrimination claims (Claims I-IX) on the

independent ground that Wyckoff has established non-discriminatory grounds for any alleged adverse employment action, and he has adduced no evidence of pretext

### 1.     Contemporaneous Communications Set Forth Legitimate Non-Discriminatory Bases for Dr. Rao's Termination

If a Plaintiff sets forth a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Hicks*, 509 U.S. at 506–07.  The defendant's burden "is not a particularly steep hurdle." *Hyek v. Field Support Servs.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010), *aff'd*, 461 F. App'x 59 (2d Cir. 2012).  This burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, *Inc.*, 530 U.S. 133, 142 (2000) (internal quotations omitted)..  Once a defendant has proffered a nondiscriminatory reason for its adverse action, "the plaintiff can no longer rely on the prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination." *Delaney*, 766 F.3d at 168 (internal quotation marks omitted).

While Mr. Rodriguez made clear that Dr. Rao's employment had not been terminated, 56.1 Statement ¶ 27 (Shin Decl. Ex. O) ("Dr. Rao was not let go by me, he resigned."), he contemporaneously set forth multiple legitimate non-discriminatory reasons for replacing Dr. Rao as Chairman immediately upon accepting his resignation.  In an e-mail to the Board of Trustees dated January 13, 2012, Mr. Rodriguez discussed, prior to the alleged January 17, 2012 termination date, what he called a "Closed Shop" in the Department of Surgery and wrote:

> [a]lso, you permitted a few doctors to control the important revenue production areas especially Surgery.  Dr. AC Rao has used his position on the board to his advantage and dozens of surgeons I am told are kept out.  It is not right.  In the 24 hours after I accepted his resignations [sic] and did not permit him to continue as Chair, we've received dozens of inquiries to join the surgical staff.

56.1 Statement ¶ 19 (Shin Decl. Ex. J).

In a subsequent e-mail to the Board of Trustees dated January 29, 2012, Mr. Rodriguez further contemporaneously set forth "the facts as [he knew] them" regarding, among other things, Dr. Rao. 56.1 Statement ¶¶ 27-30 (Shin Decl. Ex. O).  Mr. Rodriguez referenced the "iron grip [Dr. Rao] had in the Surgery Department," coupled with his belief "that Dr. Rao had a successful private practice which has served the purpose of enriching him and removing millions of dollars from this hospital for many many years."  *Id.*at ¶ 29.  Mr. Rodriguez also referred to the allegations in the letter he received from Dr. Chendrasekhar after Dr. Rao resigned, but prior to sending the January 17, 2012 letter.  *Id.*  The Surgery Residents Letter set forth a series of allegations of misconduct by Dr. Erachshaw that occurred while Plaintiff was the Chairman of the Department, including the allegation that "[t]he general surgery residents have had, until now, no chance for recourse, because Dr. Rao had seemed to protect and support the actions of Dr. Erachshaw[.]"   56.1 Statement ¶ 23 (Shin Decl. Ex. K).  As such, Wyckoff has met its burden of setting forth legitimate non-discriminatory reasons for any adverse action.

### 2.      Plaintiff Has Presented No Evidence Of Pretext

"To avoid summary judgment, Plaintiff must offer evidence from which a reasonable jury could conclude by a preponderance of the evidence that [ ] discrimination played a role in the adverse action taken by Defendant."  *Moore,* 2013 WL 3968748, at *13 (granting summary judgment for defendants when, inter alia, there was no evidence of pretext and no reasonable jury could not find that racial or national origin discrimination played a role in the adverse action).

Dr. Rao has adduced no evidence that Mr. Rodriguez's statements -- that he believed the Surgery Department to be a closed shop, that he believed Dr. Rao had prevented other surgeons from practicing at Wyckoff, or that he believed that Dr. Rao used his private practice to enrich himself at the expense of the hospital -- are unworthy of belief or are pretext for discriminatory

animus.  While Plaintiff has sought to show that these beliefs were false, the relevant inquiry is not what was true, but what Mr. Rodriguez *believed* to be true.  *See Holleman*, 2014 WL 4907732, at *40 ("In a discrimination case, the court is decidedly not interested in the truth of the allegations against [the] plaintiff, but rather the court is interested in what *motivated* the employer.") (citing *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (emphasis in original and internal quotations omitted)).

Therefore, even if the Court finds that there is a genuine issue of material fact as to whether there was an adverse employment action and that Plaintiff has set forth a prima facie case of discrimination, Plaintiff has failed to point to any evidence showing that Wyckoff's proffered legitimate non-discriminatory reasons are pretextual.  Thus, there is no genuine issue for trial, and Wyckoff is entitled to summary judgment on all Plaintiff's discrimination claims.

## III.   WYCKOFF IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S NEW YORK STATE AND NEW YORK CITY HUMAN RIGHTS CLAIMS (CLAIMS IV-IX) FOR THE SAME REASONS AS ARTICULATED FOR THE FEDERAL CLAIMS

Courts assess New York State and New York City Human Rights Law claims under the same burden-shifting framework established in *McDonnell Douglas* for federal discrimination claims.  *See Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) (applying *McDonnell Douglas* framework to NYSHRL); *Figueroa*, 2015 WL 1298502, at *6 (E.D.N.Y. 2015) (applying *McDonnell Douglas* framework to NYCHRL claims and finding claim for more liberal construction irrelevant in light of plaintiff's failure to demonstrate pretext).  The standard of liability is the same, with the exception of age discrimination claims, which do not require the same causal link as the ADEA.  *See Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015) (age claim must be analyzed separately under the NYCHRL).  Thus, for all of the reasons set forth above, Plaintiff's race and national origin claims (Claims IV, VI, VII, and IX)

should be dismissed.  Plaintiff's age claims (Claims V and VIII) should also be dismissed because, even under the more liberal standard, a single stray comment is insufficient to establish that age was a motivating factor.  *See e.g., Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247-48 (S.D.N.Y.2000) (finding isolated, stray remark insufficient to establish animus under "motivating factor" standard); *Pummell v. Commonwealth Home Fashions, Inc.*, No. 02 Civ. 1171(DRH), 2005 WL 11727, at *5 (N.D.N.Y. Jan.3, 2005) ("[A]s a general rule, a single stray comment such as this is insufficient to establish that age was a motivating factor.") (citation omitted).

## CONCLUSION

For all the foregoing reasons, Defendant Wyckoff respectfully urges that the Court enter an order granting summary judgment in favor of Defendant Wyckoff and dismissing all the claims in the Complaint with prejudice.

Dated:  February 3, 2017

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By:  _____
Susan L. Shin
Maggie C. Maurone
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689
Susan.Shin@apks.com
Maggie.Maurone@apks.com

*Attorneys for Defendant*
*Wyckoff Heights Medical Center*

22