UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. ADDAGADA C. RAO,

                            Plaintiff,

         -against-

RAMON RODRIGUEZ and WYCKOFF HEIGHTS
MEDICAL CENTER, INC,

                            Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

14-CV-1936 (NGG) (ST)

NICHOLAS G. GARAUFIS, United States District Judge.

In this action, Plaintiff Dr. Addagada C. Rao asserts that Defendants Ramon Rodriguez and Wyckoff Heights Medical Center, Inc. ("Wyckoff"), discriminated against him on the basis of race, national origin, and age in violation of federal, state, and municipal law. (See Compl. (Dkt. 1).) Defendants have jointly moved for summary judgment on all claims (the "Motions"). (See Wyckoff Mot. for Summ. J. (Dkt. 82); Rodriguez Mot. for Summ. J. (Dkt. 91) (joining in Wyckoff's motion); see also Mem. in Supp. of Wyckoff Mot. for Summ. J. ("Wyckoff Mem.") (Dkt. 83); Mem. in Supp. of Rodriguez Mot. for Summ. J. ("Rodriguez Mem.") (Dkt. 93).) For the reasons stated below, Defendants' Motions are DENIED.

I.     BACKGROUND

This section reviews the undisputed facts,[1] followed by certain allegations that are in dispute.[2]

---

[1] Except as otherwise indicated, the undisputed facts are drawn from Wyckoff's Statement of Undisputed Facts, submitted pursuant to Local Civil Rule 56.1. (Wyckoff Rule 56.1 Statement ("Wyckoff R56.1") (Dkt. 85).) Rodriguez joins Wyckoff's 56.1 Statement in full. (Rodriguez Rule 56.1 Statement (Dkt. 94) ¶ 2.) The court's summary omits reference to any fact or any descriptive language from Wyckoff's 56.1 Statement that Plaintiff has disputed. (See Pl. Rule 56.1 Statement (Dkt. 87).) Citations to the record are omitted.

[2] The disputed allegations are drawn from Plaintiff's opposition papers. (Pl. Opp'n to Defs.' Mots. for Summ. J. ("Pl. Opp'n") (Dkt. 88)). Citations to the record are omitted.

1

## A. Undisputed Facts

Plaintiff "was employed as the Chairman of Wyckoff's Department of Surgery from 1988 until January 2012." (Wyckoff Rule 56.1 Statement ("Wyckoff R56.1") (Dkt. 85) ¶ 1.) "During the time that Plaintiff was working for Wyckoff he also maintained a private practice" (the "Rao PC"). (Id. ¶ 4.) Certain physicians were employed both by Wyckoff and by the Rao PC. (Id. ¶¶ 5-6.) On or about December 23, 2011, Rodriguez was appointed as Wyckoff's Chief Executive Officer ("CEO"). (Id. ¶ 3.)

### 1. Plaintiff's December 30, 2011, Letter

"Plaintiff wrote a letter dated December 30, 2011 to Dr. Mounzer Tchelebi, [Wyckoff's] Chief Medical Officer" (the "December 30 Letter"). (Wyckoff R56.1 ¶ 7.) The Letter stated: "I would like to step down as Chairman of Surgery. I am requesting that you form a search committee for appointing a new Chairman. I will continue to be acting Chairman until you have recruited an appropriate replacement." (Dec. 30, 2011, Ltr. (Dkt. 84-6).)

### 2. Rodriguez's January 8, 2012, Email

On January 8, 2012, Rodriguez directed his executive assistant to send an email on his behalf "to the entire hospital" stating, in relevant part:

> Almost a week ago, [Plaintiff] submitted his resignation as Chief of Surgery. It is with great humbleness that I accept his decision. . . . It is no reflection on [Plaintiff's] many years of service that this action is being taken, it is just for every time there is a season.
>
> I've asked Dr. Akella Chendrasekhar to assume the position of Acting Chief of Surgery[3] until such time that a Search Committee has been formed and conclude their work with a recommendation of a candidate.

(Jan. 8, 2012, Email (Draft) (Dkt. 84-7) (draft sent by Rodriguez to executive assistant); see also Jan. 8, 2012, Email (as Sent) (Dkt. 84-8) (substantially identical version sent from executive

---

[3] The parties appear to use the terms "Chairman of Surgery" and "Chief of Surgery" interchangeably.

2

assistant to hospital staff); Wyckoff R56.1 ¶¶ 9-11, 13.) Chendrasekhar, who was appointed as Acting Chief of Surgery, "is of Indian descent." (Id. ¶ 12.)

### 3. Subsequent Events

The next day, January 9, 2012, Plaintiff and Rodriguez both "attended a regular monthly inter-departmental meeting of the various department chairpersons at Wyckoff. . . . At this meeting[,] Rodriguez declared to the others present that [Plaintiff] had resigned as Chief of Surgery on December 30, 2011," and "announced that [Rodriguez] had appointed a new Acting Chief of Surgery." (Wyckoff R56.1 ¶ 17.) Plaintiff stated that he had not resigned, and protested the appointment of a new Acting Chief. (Id.) Rodriguez then instructed Plaintiff to leave the meeting, since he was no longer the Chief, and the meeting was for department heads only. (Id.)

Rodriguez sent emails to Wyckoff's Board of Trustees on January 13 and 29, 2012, expressing concern that Plaintiff had been running a "closed shop" in the Wyckoff surgery department by restricting entry to the surgical staff, and accusing Plaintiff of "removing" revenue from Wyckoff to the Rao PC. (Id. ¶¶ 18-19, 27-30.) Rodriguez also emphasized his view that Plaintiff "was not let go," but rather that Plaintiff "resigned." (Id. ¶ 28.)

On January 15, 2012, Acting Chief Chendrasekhar forwarded Rodriguez a letter from one of Wyckoff's chief surgery residents (the "Surgery Resident Letter"). (Id. ¶ 20.) The letter alleged "misconduct by Dr. Percy Erachshaw that occurred while Plaintiff was the Chairman of the Department," and explained that the "residents have remained publicly silent about these issues" because of Erachshaw's "close ties with [Plaintiff]." (Id. ¶¶ 21-23; see also id. ¶ 5 (noting that Erachshaw was employed by the Rao PC in addition to working at Wyckoff).)

3

### 4. The January 17, 2012, Notice of Termination

On January 17, 2012, Wyckoff provided "notice of termination" letters to both Plaintiff and Erachsaw. (Id. ¶¶ 25, 26.) Both terminations had an effective date of February 17, 2012. (Id.)

### B. Plaintiff's Additional Factual Allegations

"Plaintiff is of Indian national origin . . . and his skin color is brown." (Pl. Opp'n to Defs.' Mots. for Summ. J. ("Pl. Opp'n") (Dkt. 87) at 1.) Plaintiff "was 70 years old at the time of the events at issue." (Id.) As of December 2011, when Rodriguez became Wyckoff's CEO, "Wyckoff had a mandatory retirement requirement in place for departmental chairpersons . . . when they reached the age of 75." (Id. at 3.)

#### 1. Erachshaw's December 29, 2011, Meeting with Rodriguez

The day before Plaintiff's December 30 Letter, Erachshaw met with Rodriguez and allegedly had the following exchange:

> Rodriguez stated to Erachshaw, "tell Dr. Rao to resign now, and if he does not resign, I'll fire him." In response, Erachshaw stated that Plaintiff is responsible for a high volume of surgeries at Wyckoff, and asked, "what is this all about?" Rodriguez replied, "tell your boss to look in the mirror. His face looks like an oyster shell." Erachshaw commented that Plaintiff was 70 years old but possessed high energy and personally performed about 300 surgeries a year. Then Rodriguez referred to Plaintiff as "calcified." Erachshaw asked him, "what are you talking about?" Rodriguez answered, "well, there is a certain ethnic culture here and one of my jobs is to change that."

(Pl. Opp'n at 4 (citing to Erachshaw's testimony and affidavit).) Defendants deny that Rodriguez made these remarks. (Wyckoff Mem. at 9.)

Plaintiff alleges that "Erachshaw promptly discussed [this] conversation" with him. (Pl. Opp'n at 4.) That day and the following morning, Plaintiff and Erachshaw learned that

4

many hospital staff members believed that Rodriguez had fired Plaintiff, or intended to fire him soon. (Id. at 5.)

### 2. Plaintiff's December 30, 2011, Letter

Plaintiff alleges that he put the December 30 Letter in a sealed envelope and left it in Tchelebi's office. (Pl. Opp'n at 7.) Plaintiff then called Tchelebi on his cell phone, recounted Erachshaw's conversation with Rodriguez, and told Tchelebi about the December 30 Letter. (Id.) "In response, Dr. Tchelebi informed [Plaintiff] that he intended to tear up the letter as soon as he returned to his office the following week, because [Plaintiff's] job could not be terminated by Mr. Rodriguez, only by the Board of Trustees." (Id.)

Tchelebi contests these allegations. He testified that he was physically present at the hospital on December 30, 2011, and that he received Plaintiff's letter and gave it to Rodriguez that same day. (Id.) He admits that he spoke to Plaintiff on the phone,[4] but offers a differing account of the conversation: Tchelebi allegedly "informed Plaintiff that he had passed on Plaintiff's letter to Rodriguez, before thanking him for his years of service." (Id. at 8.) Plaintiff responds that based on the available evidence—including E-Z Pass vehicle records and Wyckoff's biometric "Timesheet" records—Tchelebi was likely not in the hospital at any point on December 30, 2011, after Plaintiff allegedly placed the letter in his office. (Id. at 9-10.)

### 3. Plaintiff's January 3, 2012, Meeting with Rodriguez

Plaintiff and Erachshaw met with Rodriguez together on January 3, 2012, and allegedly had the following exchange:

> Plaintiff repeatedly asked Rodriguez, "What is the problem?" while pointing out that he (Plaintiff) was in very good health and that he was doing "a great job here." However, Rodriguez . . . responded,

---

[4] Tchelebi initially denied that he spoke with Plaintiff by telephone on December 30, 2011, but he "later corrected this statement . . . when confronted with his subpoenaed cell phone records." (Pl. Opp'n at 7.)

"you're old. I want you out. Look at your face in the mirror. It looks like an oyster shell. I want you out. This is it."

(Pl. Opp'n at 10.)

### 4. Other Remarks Made by Rodriguez

Plaintiff points to testimony from various Wyckoff doctors that, at various points in January 2012, Rodriguez made comments about ridding the hospital of a so-called "Indian Mafia" and "House of Arya." (Pl. Opp'n at 12-14.) Defendants deny that Rodriguez made any of these remarks. (Wyckoff Mem. at 9.)

"Dr. John Vernaleo, a former Wyckoff Chief of Infectious Diseases, testified that he was present at a big meeting at Wyckoff of chairmen, directors, and attending physicians," at which "Rodriguez complained about having been sued by Plaintiff . . . and openly referred to Plaintiff . . . as a 'brown monkey.'" (Pl. Opp'n at 13.) Defendants contend that this "alleged statement was made—at the earliest—in May 2013," more than a year after the events surrounding Plaintiff's departure. (Wyckoff Reply (Dkt. 89) at 10.)

### 5. Wyckoff's New Chief of Surgery

Rodriguez allegedly hired Dr. Stephen Carryl in mid 2012 to become Wyckoff's new Chief of Surgery. (Pl. Opp'n at 2.) "Dr. Carryl is not of Indian national origin/race." (Id. at 2 n.2.)

### C. Plaintiff's Causes of Action

Plaintiff asserts the following causes of action (Compl. ¶¶ 97-135):[5]

- Discrimination on the basis of race against both Defendants under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et seq.; the New York State Human Rights Law (the "State HRL"), N.Y. Exec. Law §§ 290 et seq.; and the

---

[5] Plaintiff initially asserted an additional cause of action against Rodriguez under the New York Judiciary Law (Compl. ¶¶ 136-141), but withdrew this claim in February 2016 (see Feb. 18, 2016, Order).

New York City Human Rights Law (the "City HRL"), N.Y.C. Admin. Code §§ 8-107 et seq.;[6]

- Discrimination on the basis of national origin:
  - Against both Defendants under the State HRL and the City HRL;
  - Against Wyckoff under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq.;
- Discrimination on the basis of age:
  - Against both Defendants under the State HRL and the City HRL;
  - Against Wyckoff under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq.;
- Claims that Rodriguez "aided, abetted, incited, compelled or coerced" the asserted violations of the State HRL and the City HRL (the "Derivative HRL Claims").

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"[T]he judge's function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). In so doing, the court must "resolve all ambiguities and draw all inferences in favor of the nonmovant." Frederick v. United Bhd. of Carpenters, 665 F. App'x 31, 33 (2d Cir. 2016) (summary order)

---

[6] The State HRL and the City HRL prohibit discrimination on the basis of both "race" and "color." N.Y. Exec. Law § 296; N.Y.C. Admin. Code § 8-107. Neither party has argued that the difference between "race" and "color" is material in this case.

7

(citing Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, 182 F.3d 157, 160 (2d Cir. 1999)). In short, "[s]ummary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Id. at 33-34 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## B. Employment Discrimination and the Burden of Proof

The court analyzes all of Plaintiff's substantive discrimination claims under the burden-shifting framework defined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and its progeny.[7] "Under these cases, the plaintiff bears the initial burden of establishing a prima facie case of discrimination." Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008) (citation omitted). This burden "is not onerous." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). A plaintiff need only show that "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (quoting Holcomb, 521 F.3d at 138).

If the plaintiff successfully establishes a prima facie case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." Holcomb, 521 F.3d at 138 (quoting McDonnell Douglas, 411 U.S. at 802).

---

[7] It is clear that McDonnell Douglas governs claims under Title VII, Section 1981, and the State HRL. Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (collecting cases). Plaintiff raises a question of law as to whether McDonell Douglas governs all City HRL claims. (See Pl. Opp'n at 25 n.4.) Plaintiff does not brief an alternative legal standard, however. In any event, the court need not reach the issue. City HRL "claims are to be reviewed more liberally" than the equivalent federal standards, and "must be construed broadly in favor of plaintiffs alleging discrimination." Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 71 (2d Cir. 2016) (summary order) (emphasis added) (citing Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009); Nelson v. HSBC Bank USA, 929 N.Y.S.2d 259, 262 (N.Y. App. Div. 2011)). Because the court finds that Plaintiff's federal claims and State HRL claims survive under the McDonnell Douglas framework, Plaintiff's City HRL claims necessarily survive as well.

8

> If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing . . . that the employer's determination was in fact the result of racial discrimination. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

Id. (quoting Burdine, 450 U.S. at 253).

"[T]o defeat summary judgment" on claims of race and national origin discrimination, a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013) (quoting Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004)).

With regard to age discrimination claims under the ADEA, a plaintiff faces the heavier burden of presenting a triable issue "as to whether [his] age was a 'but for' cause of [his] termination." Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014) (emphasis added) (alterations in original) (internal quotation marks and citation omitted); see also Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009) (eliminating the "mixed-motive" analysis as to ADEA claims). Age discrimination claims under the City HRL do not require but-for causation. See Velazco v. Columbus Citizens Found., 778 F.3d 409, 410-11 (2d Cir. 2015) (analyzing state and federal case law). It is unclear whether age discrimination claims under the State HRL follow the ADEA model. See, e.g., Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105 n.6 (2d Cir. 2010). The court need not decide this question, however, because the court finds a triable issue of fact under the more stringent standard of but-for causation.

## III. DISCUSSION

Plaintiff claims that Defendants discriminated against him on the basis of race, national origin, and age. Defendants move for summary judgment on all claims on the grounds that (1) Plaintiff resigned, and so did not suffer an actionable "adverse employment action"; and (2) even if Plaintiff did suffer an adverse action, he fails to carry his burden under <u>McDonnell Douglas</u> with regard to any protected characteristic. The court finds that both arguments involve genuine disputes of material fact, and therefore, that summary judgment must be denied.

Defendants do not challenge the Derivative HRL Claims except insofar as they contest the underlying liability. (<u>See</u> Rodriguez Mem. at 1-2.) Because the court denies summary judgment on Plaintiff's substantive discrimination claims, the court also denies summary judgment on the Derivative HRL Claims.

### A. Adverse Employment Action

Defendants contend that Plaintiff "voluntarily resigned" in the December 30 Letter. (Wyckoff Mem. at 6.) Defendants argue that "all [of Plaintiff's] claims fail as a matter of law" because he "cannot establish that he suffered an adverse employment action." (<u>Id.</u>) Plaintiff counters that "there is a factual dispute as to whether the [December 30 Letter] was a resignation letter in the first place, and if it was, whether such resignation was rescinded" during Plaintiff's "conversation with Tchelebi" that same day.[8] (Pl. Opp'n at 27.)

---

[8] Plaintiff also argues that, if the December 30 Letter is found to constitute a resignation, it was a coerced resignation, and therefore constitutes an actionable constructive discharge. (Pl. Opp'n at 27-28.) The court need not reach this issue, but notes that a constructive discharge claim would likely be procedurally barred in light of Plaintiff's failure to include any such claim in his complaint before the Equal Opportunity Employment Commission or in his complaint in this action. <u>See</u> <u>Hodges v. Holder</u>, 547 F. App'x 6, 7 (2d Cir. 2013) (summary order) ("[A] plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in [his] EEOC charge." (quoting <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 83 (2d Cir. 2001)); <u>see also, e.g.</u>, <u>Petrisch v. HSBC Bank USA, Inc.</u>, No. 07-CV-3303 (KAM) (JMA), 2013 WL 1316712, at *10 (E.D.N.Y. Mar. 28, 2013) ("[A] party cannot amend her complaint simply by alleging new facts and theories in her memorandum opposing summary judgment." (alterations, internal quotation marks, and citation omitted)).

10

The court agrees with Plaintiff that the December 30 Letter could reasonably be read as stating Plaintiff's intention to "step down" in the near future, and requesting that the necessary procedures be initiated to search for a replacement. (See Dec. 30, 2011, Ltr.) Even if Rodriguez received the Letter and interpreted it as a resignation, his dispute with Plaintiff at the interdepartmental meeting on January 9, 2012, provided notice that Plaintiff may not have intended to resign. Nonetheless, Defendants proceeded with a formal termination on January 17, 2012.[9]

Drawing all reasonable inferences in Plaintiff's favor, the court finds a dispute of fact as to whether the December 30 Letter constituted a resignation, and, therefore, as to whether Plaintiff suffered an adverse employment action.[10] Defendants are not entitled to summary judgment on this basis.

### B. Evidence of Discrimination

Defendants argue that Rodriguez's alleged comments fail to show discriminatory intent based on any of Plaintiff's protected characteristics. (Wyckoff Mem. at 9.) They argue that Plaintiff has failed to establish a prima facie case of discrimination based on race, national origin, or age. (See id. at 9-17.) Defendants further contend that Plaintiff's evidence is insufficient to overcome Defendants' asserted non-discriminatory justifications: Rodriguez's concerns about Plaintiff's role in the "closed shop" and the misconduct alleged in the Surgery Resident Letter. (See id. at 17-20.)

---

[9] In addition, the December 30 Letter stated Plaintiff's intention "continue to be acting Chairman" until "an appropriate replacement" had been recruited. (Dec. 30, 2011, Ltr.) Nonetheless, Chendrasekhar was immediately instated as Acting Chief of Surgery pending a permanent replacement. That factor, too, may potentially contribute to a finding of an adverse employment action even prior to Plaintiff's formal termination.

[10] In light of this finding, the court need not address the factual dispute concerning Tchelebi's whereabouts and conversations on December 30, 2011, or the legal dispute concerning an individual's ability to rescind a resignation. (Compare Pl. Mem. at 6-10, 27, with Wyckoff Reply at 2-3.)

The court assumes, without deciding, that the parties have satisfied their burdens under the first two steps of McDonnell Douglas, and therefore turns to question of whether Plaintiff has raised any disputed issues of material fact under the applicable standard for each type of alleged discrimination. The court acknowledges certain ambiguities in Rodriguez's alleged remarks. When resolving these ambiguities in Plaintiff's favor, however, the court finds that Plaintiff has met his burden under McDonnell Douglas, and that summary judgment must therefore be denied.

1. Legal Standard

"[S]tray remarks, without more, cannot defeat summary judgment" on an employment discrimination claim. Martinez v. N.Y. City Transit Auth., — F. App'x —, 2016 WL 7036823, at *3 (2d Cir. Dec. 2, 2016) (citing Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998)). Courts in this jurisdiction consider the following four factors to determine "whether a remark is probative" of discriminatory intent:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker);
>
> (2) when the remark was made in relation to the employment decision at issue;
>
> (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and
>
> (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149-50 (2d Cir. 2010) (collecting cases).

2. Evidence of Discrimination Based on Race or National Origin

Rodriguez allegedly made several remarks that could be interpreted as describing Plaintiff's brown skin, his Indian origin, or both. These remarks include: (1) saying on two occasions that Plaintiff's face "looks like an oyster shell"; (2) stating that "there is a certain ethnic culture" at Wyckoff, and that "one of [Rodriguez's] jobs is to change that"; (3) referring

to an alleged "Indian Mafia" and "House of Arya" among Wyckoff's medical staff; and

(4) referring to Plaintiff as a "brown monkey."

Turning to the Henry factors, the court notes that all four comments were allegedly made by Wyckoff's CEO, a key decision maker with regard to high-ranking medical offices. Other than the "brown monkey" comment, all the alleged remarks were made within weeks of Plaintiff's departure, and appear to have been directly "related to the decision-making process," Henry, 616 F.3d at 149: Rodriguez allegedly made the "oyster shell" and "ethnic culture" comments while explaining why he wanted Plaintiff to leave Wyckoff, and made the "Indian Mafia" and "House of Arya" comments while discussing his more general desire to remove certain individuals from Wyckoff's staff.

Defendants emphasize the third Henry factor—"whether a reasonable juror could view the remark as discriminatory"—and argue that the "oyster shell," "ethnic culture," and "House of Arya" comments could be interpreted as referring neither to South Asian race nor to Indian origin. (See Wyckoff Mem. at 9-15.) Indeed, the deponents in this case differed in their understanding of what these comments were intended to convey. (See, e.g., id. at 10-11.) The court acknowledges that certain individual comments may not have explicitly named a protected characteristic. Nonetheless, the court recognizes its duty to "resolve all ambiguities and draw all inferences" in Plaintiff's favor at this stage of the proceedings. Frederick, 665 F. App'x at 33 (citation omitted). Rodriguez's alleged remarks, assessed in the aggregate, could reasonably be interpreted as evidence that Plaintiff's race or national origin were a "motivating factor[]" in Rodriguez's employment decisions.[11] Garcia, 706 F.3d at 127.

---

[11] "[C]laims based on race and national origin "may substantially overlap or even be indistinguishable depending on the specific facts of a case." Vill. of Freeport v. Barrella, 814 F.3d 594, 606 (2d Cir. 2016) (footnote omitted).

13

The fact that Rodriguez instated an Indian physician as Acting Chief of Surgery does not necessarily undermine this conclusion. "[T]he focus remains on whether the plaintiff 'lost out because of his [protected characteristic].'" See Ehrbar v. Forest Hills Hosp., 131 F. Supp. 3d 5, 27 (E.D.N.Y. 2015) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)). If Plaintiff is correct that Defendants sought to reduce the overall number of physicians of South Asian race or Indian origin at Wyckoff, then Defendants could have furthered that discriminatory goal by terminating one member of the protected group and granting the newly empty title to an existing employee from the same group. Consistent with that narrative, Plaintiff alleges that the outside doctor ultimately chosen as the new permanent Chief of Surgery was not of Indian origin or race. (Pl. Opp'n at 2 n.2.)

In addition, Plaintiff need not prove that Defendants' proffered non-discriminatory bases were mere pretext for the adverse employment action. To defeat summary judgment, Plaintiff need only show "that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." Garcia, 706 F.3d at 127 (emphasis added) (citation omitted).

The court concludes that Defendants' Motions must be denied as to Plaintiffs' claims of discrimination on the basis of race and national origin.

### 3. Evidence of Discrimination Based on Age

Plaintiff's claims of age discrimination survive as well, even after taking into account the ADEA's heightened burden of but-for causation. Rodriguez allegedly said to Plaintiff: "You're old. I want you out." Rodriguez also allegedly referred to Plaintiff as "calcified" when explaining to Erachshaw why Rodriguez wanted Plaintiff to leave Wyckoff. Finally, the comment that Plaintiff's face "looks like an oyster shell" could reasonably be interpreted as referring to Plaintiff's apparent age as well as—or as opposed to—the color of his skin.

"The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers only consideration, but rather that the adverse employment action <u>would not have occurred without it</u>." Delaney, 766 F.3d at 169 (internal quotation marks, alteration, and citation omitted). Drawing all reasonable inferences in Plaintiff's favor, the court finds that Plaintiff has satisfied this standard. Rodriguez's emails to the Board may have emphasized non-discriminatory reasons for Plaintiff's departure, but when Erachshaw and Plaintiff initially confronted him about seeking Plaintiff's removal, Rodriguez explicitly referenced Plaintiff's age. In each interaction, Rodriguez's alleged comment was "less a 'stray' remark than an open declaration of bias. It not only reflected a highly discriminatory attitude, but also came at the time of the [adverse employment action] and referred directly to [Plaintiff's] tenure with [Wyckoff] in negative terms." Martinez, 2016 WL 7036823, at *3 (assessing the alleged comment: "People who are eligible to retire should retire and make room for the younger generation."). Plaintiff's age discrimination claims therefore survive Defendants' Motions.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motions for Summary Judgment (Dkts. 82, 91) are DENIED. The parties are DIRECTED to proceed with pretrial procedures, as specified in orders from the undersigned and Magistrate Judge Steven Tiscione.

SO ORDERED.

Dated: Brooklyn, New York  
      March 3⁰, 2017

s/Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge