UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DR. ADDAGADA C. RAO,

                Plaintiff,

        -against-

RAMON RODRIGUEZ and WYCKOFF HEIGHTS
MEDICAL CENTER, INC,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-1936 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

In this action, Plaintiff Dr. Addagada C. Rao asserts that Defendants Ramon Rodriguez and Wyckoff Heights Medical Center, Inc. ("Wyckoff"), discriminated against him on the basis of race, national origin, and age in violation of federal, state, and municipal law. (See Compl. (Dkt. 1).) The court assumes the parties' familiarity with the factual and procedural background of this action. The parties have collectively submitted 19 motions in limine seeking to preclude the admission of certain evidence at trial, to narrow the legal and factual issues in dispute, and to remedy certain alleged violations of discovery procedures. (Pl. Mots. in Lim. ("Pl. Mots.") (Dkt. 103); Defs. Mots. in Lim. ("Defs. Mots.") (Dkt. 106); see also Pl. Mem. in Supp. of Mots. in Lim. ("Pl. Mem.") (Dkt. 104); Defs. Mem. in Supp. of Mots. in Lim. ("Defs. Mem.") (Dkt. 107).) For the reasons set forth below, Plaintiff's 5 motions in limine ("Plaintiff's Motions") and Defendants' 14 motions in limine ("Defendants' Motions") are GRANTED IN PART and DENIED IN PART, with ruling on certain questions RESERVED until trial.

I. **PLAINTIFF'S MOTIONS**

Plaintiff seeks to apply the doctrine of judicial estoppel to certain facts concerning a letter allegedly authored by a group of Wyckoff surgical residents (the "Resident's Letter"). Plaintiff's

1

four remaining motions request evidentiary rulings and monetary sanctions based on Defendants' alleged spoliation of evidence and other discovery violations.[1] The court finds that Plaintiff is entitled to an adverse inference with regard to certain Wyckoff physician term sheets. Plaintiff's remaining motions are denied.

### A. Judicial Estoppel and the Residents' Letter

Plaintiff's First Motion[2] requests that "defendants be precluded from introducing [the Residents' Letter] as a legitimate, non-discriminatory reason for plaintiff's termination pursuant to the doctrine of judicial estoppel." (Pl. Mem. at 7.) Discovery showed Rodriguez received the undated Residents' Letter "as an attachment to a forwarded email" on January 15, 2012, meaning that it was received prior to Plaintiff's certified termination letter on January 17, 2012. (Id. at 2.) Plaintiff notes, however, that in previous employment discrimination proceedings brought against the same Defendants (the "Prior Proceedings"), Defendants asserted that the Residents' Letter was received at some point "between January 20 and 27, 2012." (Id. at 3.) Plaintiff therefore seeks preclusion on grounds of judicial estoppel.

The court finds this argument to be without merit. The doctrine of "judicial estoppel[] 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)). Similarly, with respect to statements made in separate proceedings, courts should not "apply judicial estoppel where 'the statements at issue [in the current and prior proceedings] do not

---

[1] It appears that, in some instances, Plaintiff has not complied with the procedures specified at Local Civil Rule 37.3, which outlines the "mode of raising discovery and other non-dispositive pretrial disputes." The court notes that motions in limine are not the proper forum for adjudicating run-of-the-mill discovery disputes.

[2] In the interests of clarity, the court refers to the parties' numbered motions in limine as they appear in the parties' briefs, even when the motions appear in a different order in this opinion.

2

present an irreconcilable conflict.'" Chevron Corp. v. Donziger, 833 F.3d 74, 128 (2d Cir. 2016) (quoting Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 119 (2d Cir. 2004)).

There is no irreconcilable conflict in this instance. The court agrees with Defendants that the precise date on which Rodriguez received the Residents' Letter "was not at issue" in the Prior Proceedings once it was established that the date of receipt was no later than January 27, 2012. (Defs. Mem. in Opp'n to Pl. Mots. in Lim. ("Defs. Opp'n") (Dkt. 113) at 1.) The parties therefore had no need to conduct "attendant document discovery with e-mail searches." (Id. at 2.) "[I]t was not until Dr. Rao filed this lawsuit that Defendants had reason to confirm the precise date that Mr. Rodriguez received the letter." (Id.) Defendants' current position—that Rodriguez received the Residents' Letter on January 15, 2012—does not conflict with their position in the Prior Proceedings that the letter was received on or before January 27, 2012. Plaintiff's First Motion is therefore denied.

### B. Alleged Discovery Violations

1. The Residents' Letter

In addition to the judicial estoppel argument, Plaintiff's Second Motion seeks "to preclude the use of the [Residents' Letter] for any [] purpose, including as 'after acquired evidence,'" based on Defendants' "very late production and prior withholding of the emails and attachments" pertinent to the letter's drafting history. (Pl. Mem. at 8, 10.) Plaintiff's Second Motion is denied.

Courts are authorized to order preclusion or other sanctions "[i]f a party fails to provide information or identify a witness" in violation of discovery procedures, "unless the failure . . . is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). Even if Plaintiff is correct that production was belated, he has failed to show that he was harmed by the delay. There is no dispute that the evidence in question was produced before the close of discovery. (Pl. Mem. at 8; see also Defs.

3

Opp'n at 8-10.) Plaintiff could therefore have sought additional discovery based on those materials, had he so desired. Plaintiff has failed to establish cause for preclusion or other discovery-based sanctions regarding the Residents' Letter.

2. Audio Recordings of Board Meetings on October 6, 2011, and January 5, 2012

Plaintiff asserts that Defendants spoliated audio recordings of certain meetings of the Wyckoff Board of Trustees (the "Board"). (Pl. Mem. at 10-12.) Plaintiff's Third Motion seeks sanctions relating to recordings of meetings held on October 6, 2011, and January 5, 2012. (Id. at 13-14.) The court denies Plaintiff's Third Motion with regard to both meetings.

*a. The October 6, 2011, Board Meeting*

Plaintiff seeks an order precluding Defendants from introducing a statement allegedly made by Plaintiff at the October 6, 2011, meeting—a statement that was not included in the meeting minutes—which relates to Defendants' asserted non-discriminatory basis for Plaintiff's termination. (Id. at 13.) Defendants profess that they "have no intention of using any evidence pertaining to the October 2011 and January 2012 Board meetings," arguing that these meetings "are not relevant to any claim or defense in this action." (Defs. Opp'n at 12.) The court therefore denies Plaintiff's request on grounds of mootness.

*b. The January 5, 2012, Board Meeting*

Second, Plaintiff points to the January 5, 2012, meeting, at which the Board allegedly discussed a complaint against Wyckoff physician Dr. Parvez Mir. (Pl. Mem. at 13-14.) The "anonymous written complaint" (the "Anonymous Complaint") alleged that Mir had "made several racially [] sensitive remarks against physicians and staff at the hospital." (Pl. Opp'n to Wyckoff Mot. for Summ. J. (Dkt. 87) at 21.) Plaintiff alleges that the Anonymous Complaint was brought up at the January 5, 2012, meeting "only to the extent of the trustees not wanting to discuss it on the record." (Id.) Plaintiff seeks "an order directing [any related] disputed facts to

4

be taken as established . . . , or at least [] an adverse inference," as well as "payment of [] reasonable expenses, including attorneys' fees" on the basis of Defendants' alleged spoliation. (Id. at 14.)

A party seeking sanctions for spoliation must show:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)).

The court declines to impose sanctions on Defendants. As discussed below in Section II.A.1, Plaintiff's claims find no relevant support in either the Anonymous Complaint or in the Board's alleged failure to investigate. The court therefore declines to impose sanctions based on the destruction of allegedly related evidence from the January 5, 2012, Board meeting.

### 3. Back-Up Audio Recordings of February 2012 Board Meetings

Plaintiff's Fourth Motion accuses Defendants of failing to timely produce and accurately label back-up audio recordings of certain Board meetings in February 2012. (Pl. Mem. at 14-15.) Based on these alleged discovery violations, Plaintiff "seeks an order compelling production of these audio files before the trial"; a preclusion order "barring defendants from using any of these back-up audio files at trial for any purpose, without affecting plaintiff's right to use these audio files"; an order directing that Plaintiff's version of any related disputed facts "be taken as established"; and "payment of reasonable expenses including attorney's fees." (Id. at 16.)

Plaintiff's Fourth Motion is denied. Plaintiff was present for two of the three cited meetings, but alleges only that "statements were made <u>by</u> him" and "<u>about</u> him . . . , thereby rendering back-up . . . digital audio recordings of these meetings discoverable and produceable." (Pl. Mem. at 15 (emphasis added).) Plaintiff has failed to allege any <u>relevant</u> content, however. He has therefore failed to show that the alleged discovery violations caused any harm. Plaintiff is thus not entitled to sanctions with regard to those recordings. See Fed. R. Civ. P. 37(c)(1).

Plaintiff was not present for the Board meeting on February 16, 2012, but he alleges that, based on a "prefatory email," the meeting "appears . . . to have been very much about [him] to a significant degree." (Id.) The cited "prefatory email," a short and cryptic message sent from Rodriguez to Board Chairman Gary Goffner the morning of the Board meeting, does not clearly indicate an agenda or even general topics for conversation. (See Feb. 16, 2012, Email (Dkt. 105-41) at ECF p.7.) Defendants dispute that the audio recording for that meeting was responsive to any of Plaintiff's discovery requests, and point out that Plaintiff never made a motion to compel production of the recording even after becoming aware of its existence in June 2015, well before the close of discovery. (Defs. Opp'n at 17-18.) To the extent that the recording is non-responsive, there is no actionable discovery violation. To the extent that Plaintiff became aware of a potential discovery violation in 2015, he ought to have resolved the issue at that time. The court sees no adequate justification to impose sanctions on the eve of trial.

4. <u>Physician Term Sheets</u>

Plaintiff's Fifth Motion alleges that Defendants impermissibly withheld Wyckoff term sheets for certain physicians employed both at Wyckoff and at Plaintiff's private medical practice. (Pl. Mem. at 17-22.) Plaintiff characterizes Defendants' actions as "presumptive spoliation." (Id. at 17.) Based on these alleged violations, Plaintiff seeks: (1) an order precluding Defendants from arguing "that any of the surgeons in the Wyckoff Surgery

6

Department did not have the right to bill and retain their [Medicare] Part B revenue components for surgeries performed by them at Wyckoff during the relevant period"; (2) "payment of reasonable expenses, including attorney's fees, of the motion"; and (3) "permission to inform the jury of the withholding of material evidence." (Id. at 23-24.) The court finds Plaintiff's argument persuasive, but declines to grant the requested relief. Instead, the court grants an adverse inference regarding the missing term sheets.

Plaintiff has offered a concerning narrative: not only did Defendants allegedly fail to produce certain employment-related documents, despite testimony from former Wyckoff employees that such documentation is preserved as a matter of course, but an arguably responsive document later appeared in state proceedings involving the same parties. (Id. at 17-22.) Defendants have offered technical arguments as to the term sheets' relevance (Defs. Opp'n at 19)—which the court finds non-dispositive, in light of Plaintiff's proffered testimonial evidence (see Pl. Mem. at 17-22)—as well as to the responsiveness of the later-produced document (Defs. Opp'n at 20-21)—which the court finds unpersuasive, in light of Plaintiff's clear efforts to secure physician term sheets for the relevant period.

Even so, the court agrees with Defendants that Plaintiff's requested relief is overly punitive. (See id. at 21.) After weighing the appropriate factors, see Chin, 685 F.3d at 162, the court finds that Plaintiff is entitled to an adverse inference: given that an identical provision regarding Medicare Part B billing appears in both term sheets that were produced, as well as a third term sheet that Plaintiff later discovered, the court will permit an inference that a similar term appeared in the term sheets that were requested, but not produced.[3]

---

[3] Plaintiff argues that he is entitled to this very outcome based on the "presumption of continuance" (see Pl. Mem. at 23 n.2), but that argument lacks merit. The presumption of continuance is a concept of temporality, allowing courts to presume that, absent evidence to the contrary, a condition known to exist at one point in time continues to exist thereafter. (Id. (collecting cases).) Here, Plaintiff attempts to impute the substantive content of unavailable

7

This ruling does not undermine Defendants' ability to argue that any material difference between the term sheets and the signed employment agreements should be resolved in favor of the employment agreements, or that, whatever the parties' contractual obligations, "the relevant issue in this case is whether Mr. Rodriguez believed, at the time of the alleged adverse employment decision, that Dr. Rao was enriching himself at the expense of the hospital." (Defs. Mem. at 18.) Moreover, the term sheets may not even surface at trial: Plaintiff does not plan to discuss billing arrangements during his case in chief, and only intends to raise the issue as relevant for rebuttal or impeachment purposes. (Pl. Mem. in Opp'n to Defs. Mots. in Lim. ("Pl. Opp'n") (Dkt. 109) at 17.) To the extent that the term sheets play a role in the case, however, Plaintiff is entitled to the inference that, at all relevant times, any unavailable term sheets for physicians employed both at Wyckoff and at Plaintiff's private medical practice contained Part B billing terms similar to the available term sheets.

## II. DEFENDANTS' MOTIONS

Defendants bring 14 motions in limine, which the court will analyze in the following categories:

- Five motions seeking to preclude evidence regarding allegations of discrimination by Wyckoff personnel, as well as allegations concerning related investigations and lawsuits; these motions are granted in part and denied in part, with ruling reserved on certain questions.

- Two motions seeking to preclude any reference to the alleged discovery violations discussed above; these motions are granted.

- Two motions seeking to preclude evidence on the basis of withdrawn legal theories (Defendants' withdrawn set-off defense and Plaintiff's withdrawn "constructive discharge" theory); these motions are granted in part and denied in part as moot, with certain questions reserved.

---

term sheets by looking to contemporaneous documents for other physicians. What Plaintiff erroneously sought to achieve through the presumption of continuance, the court provides instead through the mechanism of an adverse inference.

- One motion seeking to limit Plaintiff's potential damages based on Plaintiff's deposition testimony and other evidence; this motion is granted.
- Four motions seeking to preclude various other evidentiary submissions; these motions are granted in part and denied in part, with certain questions reserved.

**A. Evidence Regarding Allegations of Discrimination**

1. <u>The Anonymous Complaint</u>

Defendants seek to preclude Plaintiff from introducing evidence of the Anonymous Complaint against Mir "(or any similar allegations against a non-decisionmaker in this case) or from introducing any evidence regarding whether such alleged complaints were investigated." (Defs. Mem. at 3.) "In addition to being inadmissible hearsay, remarks by a non-decisionmaker about subjects other than Plaintiff's alleged termination are inadmissible." (<u>Id.</u> (citation omitted).) Defendants' First Motion is granted in part: the court precludes Plaintiff from introducing <u>substantive</u> evidence related to the Anonymous Complaint or the failure to investigate thereof. The court reserves ruling on whether such evidence may be offered to impeach Mir's testimony, as well as on the admissibility of similar allegations of discrimination against other individuals (discussed further below in Section II.A.2).

   *a. The Anonymous Complaint*

Plaintiff does not appear to contest that the Anonymous Complaint constitutes hearsay for the purposes of establishing that Mir <u>actually made</u> racially sensitive remarks. The court agrees with Defendants that the Anonymous Complaint would be inadmissible for that purpose, as would any similar out-of-court allegations of discrimination made by a non-party against another non-party. Fed. R. Evid. 801.

Even if the allegation is true, it would have little probative value given that: (1) Mir was not empowered to make decisions regarding Plaintiff's employment; (2) Plaintiff has not alleged that Mir made comments specifically about Plaintiff or in connection with decisions about

9

Plaintiff's employment; and (3) the Anonymous Complaint mentioned "racially sensitive" remarks without specifying the race or national origin at issue, and Plaintiff can only surmise that Mir was targeting Indian individuals based on Mir's known political beliefs about Indian-Kashmiri relations. (Rao Aff. in Opp'n to Defs. Mot. for Summ. J. (Dkt. 86-5) ¶¶ 9-10.) See also Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149-50 (2d Cir. 2010) (outlining factors to consider in assessing "whether a remark is probative" of discriminatory intent). Weighing this low probative value against the heavy prejudicial effect of alleged racial bias, the court finds that the Anonymous Complaint is also excludable under Rule 403. Fed. R. Evid. 403 (permitting exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

### b. *Investigation of the Anonymous Complaint*

Plaintiff contends that "[t]he failure of an employer to conduct an adequate investigation or to undertake an appropriate response can constitute evidence in support of a Title VII plaintiff's allegations." (Pl. Opp'n at 1 (alteration in original) (quoting Sassaman v. Gamache, 566 F.3d 307, 314-15 (2d Cir. 2009)).) The court finds that argument unpersuasive in this context, given the absence of any obvious connection between the Anonymous Complaint and Plaintiff's own alleged adverse employment action. Plaintiff has not asserted claims of constructive discharge or hostile work environment, where a generalized failure to investigate similar claims is arguably most relevant.[4] Moreover, it is not clear that a vigorous investigation

---

[4] Plaintiff argues that he remains entitled to assert a claim of hostile work environment because "a hostile work environment claim is a discrimination claim." (Pl. Mem. at 3 n.1.) This argument ignores the many legal authorities and theories that comprise the broad category of "discrimination claims." In this circuit, disparate treatment claims have distinct legal elements from hostile work environment claims. Compare Holcomb v. Iona Coll., 521 F.3d 130, 137-38 (2d. Cir. 2008) (explaining that a plaintiff alleging disparate treatment must show that he suffered an adverse employment action and that the defendant acted with discriminatory intent), with Littlejohn v. City of N.Y., 795 F.3d 297, 320-21 (2d Cir. 2015) ("To establish a hostile work environment . . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (internal quotation

could reasonably be expected based on an anonymous complaint that fails to specify who was discriminated against, or even the type of discrimination at issue. The court is sensitive, however, to the potential prejudice inherent in accusing a hospital of failing to investigate claims of discrimination, however vague or unsubstantiated. The court therefore finds that evidence of Defendants' alleged failure to investigate the Anonymous Complaint must be excluded under Rule 403.

       *c. Use as Impeachment Evidence*

Finally, Plaintiff argues that evidence related to the Anonymous Complaint should be admissible "to impeach Dr. Mir if he testifies against [P]laintiff, on the basis of [Mir's] own alleged anti-Indian bias plus the fact that he is beholden to defendants for not investigating or reporting the said written complaint." (Pl. Opp'n at 2.) See, e.g., United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976) ("The law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely." (collecting cases)). The court reserves ruling on any impeachment-related use of the Anonymous Complaint or the alleged failure to investigate.

    2. <u>Alleged Failures to Investigate Other Complaints</u>

Defendants' Second Motion similarly seeks to preclude evidence of Wyckoff's policies and procedures for investigating employee complaints, as well as evidence of Defendants' alleged failures to investigate complaints made by Plaintiff and by another Indian physician, Dr. John Riggs. (Defs. Mem. at 3-5.) The court reserves ruling on these issues.

The court is conscious of the Second Circuit's directive that "[t]he failure of an employer to conduct an adequate investigation" into a claim of discrimination "can constitute evidence in

---

marks and citations omitted)). Plaintiff did not plead a claim of hostile work environment in his complaint, nor did he mention that theory in opposing summary judgment. He may not add such a claim now, on the eve of trial.

support of a Title VII plaintiff's allegations," although such failure is not, "standing alone, sufficient to support an inference of discriminatory intent." Sassaman, 566 F.3d at 314-15. Plaintiff is reminded, however, that his ultimate burden is to show that he was treated <u>differently</u> on the basis of a protected characteristic. Plaintiff has alleged failures to follow internal procedures for investigating complaints of discrimination based on race and age, but he has not, to the court's knowledge, offered evidence that Defendants offer differential responses to certain types of complaints or complainants.

The court declines, at this time, to preclude the targeted evidence, but cautions Plaintiff that unduly prejudicial or cumulative evidence may be curtailed under Rules 402 and 403, particularly if Plaintiff fails to establish a meaningful comparator.

### 3. References to the Size of Law Firms or Legal Fees

Defendants' Third Motion argues that "[i]nformation regarding the size of the law firms representing Defendants, including in comparison to the size of the firm representing Plaintiff, the amount Defendants have paid in attorney's fees, or any other similar information must [] be precluded" as "irrelevant and highly prejudicial." (Defs. Mem. at 5-6.) Plaintiff responds that he has "no intention . . . to introduce [such] evidence in his case in chief." (Pl. Opp'n at 6.) Plaintiff may, however, seek to discuss such topics if "defendants [] 'open the door' . . . by introducing testimony (presumably for sympathy) of Wyckoff's 'financial distress.' In that event, the information should be presented to the jury in rebuttal." (Id. at 7.) The court sees merit in both parties' arguments. The court therefore invokes Rule 403 to presumptively preclude references to both Wyckoff's alleged financial distress, as well as the absolute or relative size of the parties' legal fees and counsels' law firms, absent a compelling argument for relevance in a specific instance.

### 4. Adverse Employment Actions Against Non-Party Physicians

Defendants' Fourth Motion seeks to preclude Plaintiff or other Wyckoff physicians from testifying that "certain other Indian doctors were fired for discriminatory reasons." (Defs. Mem. at 7.) Defendants argue that Rule 701 prohibits such lay opinion testimony. (Id.) Plaintiff anticipates, however, that eyewitnesses will testify that Rodriguez made statements about terminating physicians based on race or national origin. (Pl. Opp'n at 9-10.) In that event, the court agrees that Rodriguez's "credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. Plaintiff merely intends to engage in "traditional cross-examination" with questions regarding "the list of the subsequently terminated, demoted, or 'voluntarily' resigned Indian doctors," recognizing that "the Court can curtail the impeachment questioning of this nature after whatever point the Court deems appropriate." (Id. at 10.)

The court therefore denies Defendants' Fourth Motion, but cautions Plaintiff that Rule 701 may limit testimony that falls outside the ambit of Rule 806. See, e.g., Hester v. BIC Corp., 225 F.3d 178, 184 (2d Cir. 2000) (A lay "witness [may] opine as to why [an individual] suffered an adverse employment action," if "(a) the witness had 'established a solid foundation of his intimate involvement with [the defendant's] operation,'; (b) the witness's 'opinion was thus based on observations about [the defendant's] decision making process,'; and (c) the district court 'sought to ensure that [the witness's] testimony focused on these objective facts.'" (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911-12 (2d Cir. 1997))).

### 5. The Alleged "Brown Monkey" Remark

Defendants' Fifth Motion seeks to preclude "any evidence regarding a statement in which Mr. Rodriguez purportedly referred to Plaintiff as 'brown monkey.'" (Defs. Mem. at 8.) Defendants argue that "the alleged statement is . . . highly prejudicial," but "of low probative

13

value" because it was made more than a year after Plaintiff's departure from Wyckoff. (Id. at 8-11.) Plaintiff responds that, "when 'other indicia of discrimination are properly presented, the remarks can no longer be deemed "stray," and the jury has a right to conclude that they bear a more ominous significance.'" (Pl. Opp'n at 11 (quoting Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998)).)

The court acknowledges Defendants' concern that the alleged "brown monkey" remark may be highly prejudicial, even though it is the most temporally remote of Rodriguez's alleged statements. Nonetheless, a jury could reasonably find that the remark is probative of Rodriguez's general attitude about certain demographic groups, which may have affected his decisions in Plaintiff's case, particularly since the alleged remark arose in a discussion of Plaintiff's discrimination claims. The court denies Defendants' Fifth Motion, but invites Defendants to propose an appropriate limiting instruction, should they so desire.

### B. Plaintiff's Allegations of Discovery Violations

Defendants' Sixth and Seventh Motions seek to bar Plaintiff from referencing the alleged spoliation of evidence and other discovery infractions discussed above in Section I.B. (Defs. Mem. at 11-14.) The court excludes any such references as irrelevant and prejudicial, except insofar as necessary to effectuate the adverse inference regarding physician term sheets. See supra Section I.B.4.

### C. Withdrawn Legal Theories

#### 1. Defendants' Withdrawn "Set-Off" Defense

Defendants seek to preclude "evidence regarding the operation and billing practices of [Plaintiff's] private practice and its relationship to Wyckoff," asserting that "[t]his evidence is irrelevant, or at best needlessly cumulative, especially in light of the fact that Defendants[] have withdrawn their faithless servant defenses and attendant set-offs." (Defs. Mem. at 14.) Plaintiff

14

responds that "none of [the cited exhibits] are listed for use during plaintiff's case in chief." (Pl. Opp'n at 17.) Rather, the evidence is "listed for possible rebuttal or impeachment purposes" regarding Defendants' anticipated theory of "enrichment" as a non-discriminatory basis for Plaintiff's termination. (Id.)

Defendants' Eighth Motion is therefore granted insofar as it pertains to Plaintiff's case in chief. Plaintiff is not barred from introducing otherwise admissible evidence for rebuttal or impeachment purposes, however. In light of Plaintiff's voluminous exhibit list, the court advises Plaintiff to be mindful of evidentiary guardrails concerning relevance and cumulative impact. The court acknowledges Defendants' reminder that Plaintiff bears the burden of demonstrating discriminatory intent, and will not necessarily satisfy that burden by showing mistaken beliefs as to contractual agreements or billing policies. (See Defs. Mem. at 13-14.)

2. Plaintiff's Withdrawn "Constructive Discharge" Theory

Defendants' Eleventh Motion seeks to preclude "any evidence that [Plaintiff] was constructively discharged and/or had no choice but to resign" on the grounds that Plaintiff "did not assert a constructive discharge claim before the EEOC or in his Complaint." (Defs. Mem. at 18.) Plaintiff avers that he "will not introduce evidence that he was constructively discharged." (Pl. Opp'n at 21.) Defendants' Eleventh Motion is therefore denied as moot as to this issue; the court will exclude as irrelevant any evidence that would only be pertinent to a "constructive discharge" claim.

Defendants also seek to preclude as inadmissible hearsay any testimony "regarding [the] alleged 'terrifying rumors' that were allegedly circulating in the hospital beginning on December 30, 2011 regarding [Plaintiff's] alleged termination." (Defs. Mot. at 18.) Plaintiff responds that these rumors are supported by deposition testimony, and that he may seek to "introduce at least two documented, pre-termination instances in which Rodriguez personally spread 'terrifying

15

rumors' about plaintiff." (Pl. Opp'n at 20.) The court reserves ruling on the questions of (1) whether any such testimony would constitute hearsay, and, if not, (2) whether the testimony is sufficiently relevant absent any claim of constructive discharge.

### D. Evidence Pertaining to Damages

Defendants' Fourteenth Motion seeks to preclude Plaintiff "from introducing evidence relating to damages Plaintiff allegedly incurred beyond the date on which he would have 'stepped down' from Wyckoff if he had been allowed to continue as Acting Chairman of the Department of Surgery." (Defs. Mot. at 20.) Plaintiff wrote a letter dated December 30, 2011, to Dr. Mounzer Tchelebi, Wyckoff's Chief Medical Officer. (See Mar. 30, 2017, Mem. & Order (Dkt. 101) at 2.) Plaintiff testified in his deposition that this letter was not intended as a resignation, and merely stated Plaintiff's intention to "step down" as chairman once Wyckoff had found a successor. (Rao Feb. 12, 2016, Dep. (Dkt. 108-7) at 62:8-65:24.) When Plaintiff was asked how long it typically takes to identify and appoint a new chairman, Plaintiff replied that "it may take a year to find a proper person." (Id. at 66:5-6; see also id. at 66:8-9 (confirming that "[i]t may take a year to do").) Defendants therefore argue that "Plaintiff is not entitled to damages beyond, at the very latest, December 30, 2012,"—one year from the date of the letter— and that Plaintiff is also "not [] entitled to front pay." (Defs. Mem. at 20-21 (citations omitted).) Defendants' Fourteenth Motion is granted.

Plaintiff concedes that he is not seeking front pay because he has now reached Wyckoff's mandatory retirement age. (Pl. Opp'n at 23.) With regard to back pay, Plaintiff argues that Defendants' Fourteenth Motion "is derivative of the factual dispute over whether plaintiff's 'resignation' letter was rejected, rescinded, cancelled, and/or nullified during the eight-minute telephone conversation between plaintiff and Tchelebi" on the day the letter was delivered. (Id.; see also Mar. 30, 2017, Mem. & Order at 5.)

Plaintiff misconstrues the material factual issues in this case. The jury must examine the events of December 30, 2011, and decide whether or not Plaintiff resigned. That question is potentially dispositive. Though the Second Circuit has not addressed the issue, this court joins federal courts from multiple jurisdictions in holding that "the refusal to allow rescission of a voluntary resignation does not constitute an adverse [employment] action." Hammonds v. Hyundai Motor Mfg. Ala., LLC, No. 2:10-CV-103, 2011 WL 2580168, at *4 (M.D. Ala. June 28, 2011); see also id. at *4 n.8 (collecting cases)). "Nothing in the case law suggests that an employee is entitled to some kind of grace period during which he is free to reconsider his resignation or that an employer is obligated to allow him to rescind if he does so within a brief period of time." Cadet v. Deutsche Bank Sec. Inc., No. 11-CV-7964 (CM), 2013 WL 3090690, at *13 (S.D.N.Y. June 18, 2013) (declining to permit rescission less than 24 hours following a resignation). Of course, the jury may find that Plaintiff's various communications with Tchelebi are material to the determination of whether Plaintiff did, in fact, resign. If Plaintiff is found to have resigned, however, Plaintiff has no legal right to withdraw that resignation, and Defendants will escape liability for lack of an actionable adverse employment action.[5]

If, on the other hand, the jury finds that Plaintiff did not resign on December 30, 2011, then Plaintiff's subsequent termination would constitute an adverse action. In that event, Plaintiff remains bound by his deposition testimony interpreting the December 30, 2011, letter as stating his intention to "step down," a process that he said would take no more than a year. Absent a claim of constructive discharge, Plaintiff's letter and deposition testimony limit his back-pay damages calculation to the period ending December 30, 2012, the maximum length of time he expected to remain in his position.

---

[5] Plaintiff could have alleged theories of constructive discharge or hostile work environment, but he failed to do so. He has now formally stated his intention not to pursue a constructive discharge theory (id. at 21), and the court has already found that Plaintiff may not, at this stage, add a claim of hostile work environment, see supra n.4.

### E. Other Evidentiary Issues

#### 1. Newspaper Articles

Defendants' Ninth Motion seeks to preclude as hearsay a 2013 newspaper article (designated as PX86) that "discusses the allegations in this lawsuit and another lawsuit filed by Plaintiff against the same Defendants," as well as "other newspaper articles Plaintiff may seek to introduce." (Defs. Mem. at 16-17.) Plaintiff responds that, depending on Defendants' strategy at trial, Plaintiff "may need to call a number of contingency witnesses . . . for possible rebuttal purposes," and the cited article "may be used to refresh [certain witnesses'] recollection, given that the event in question is over four years old." (Pl. Opp'n at 19.)

Plaintiff does not contest Defendants' general hearsay argument, and so Defendants' Ninth Motion is granted. Plaintiff's proffered newspaper articles are deemed inadmissible hearsay, and are therefore excluded unless a hearsay exception applies.

#### 2. Plaintiff's Performance Evaluations

Defendants' Tenth Motion seeks to preclude "performance review and evaluation documents for Plaintiff going back to 1999." (Defs. Mem. at 17.) Defendants do not "disput[e] that Plaintiff was a qualified surgeon," and assert that "Plaintiff's competency as a surgeon has never been an issue in this case." (Id.) Defendants argue that the performance evaluation documents "are of little probative value," are "cumulative," and are "likely to confuse the jury, who may be inclined to assign undue significance" to Plaintiff's positive evaluations. (Id.)

Plaintiff responds that a prima facie discrimination claim requires a showing that Plaintiff "was qualified for the employment position he held." (Pl. Opp'n at 19 (citations omitted).) Plaintiff further argues that the older evaluations are necessary "because Wyckoff did not produce [evaluations] covering the four years immediately preceding plaintiff's termination as Chairman, i.e., for 2008, 2009, 2010, and 2011." (Id. at 20.) Plaintiff therefore invokes the

18

presumption of continuance, seeking "to introduce the 2003-2007 evaluations . . . to establish a presumption" as to the content of "the unproduced 2008-2011 evaluations." (Id. (citing Fed. R. Evid. 301, 302).)

The court reserves ruling on Defendants' Tenth Motion. Plaintiff is correct as to his prima facie burden, and must be afforded some leeway to accommodate missing documents. That said, the court will not permit irrelevant or needlessly cumulative evidence offered in support of uncontested premises.

### 3. Tchelebi E-ZPass Records

Defendants' Twelfth Motion seeks to exclude "evidence of E-ZPass records from the account of Dr. Mounzer Tchelebi," the addressee of Plaintiff's letter of December 30, 2011, which, as discussed above in Section II.D, either constituted a resignation or merely expressed Plaintiff's desire to step down in the future. (Defs. Mem. at 19.) Defendants argue that Plaintiff has no legitimate reason for contesting Tchelebi's physical location on the day of the letter's delivery: "the manner in which Dr. Rao's resignation letter was delivered to Mr. Rodriguez is irrelevant because Plaintiff does not dispute that the letter was in fact provided to him. Thus, whether or not Dr. Tchelebi was in the hospital that day [] is not relevant to any issue in this case." (Id.) Further, "Plaintiff can't rule out the countless other ways that Dr. Tchelebi could have arrived at the hospital that day." (Id.)

Defendants' Twelfth Motion is denied. The proper interpretation of the December 30, 2011, letter is material to the existence of an actionable adverse employment action, and therefore represents a key question of fact. The court is not, at this time, prepared to limit potentially relevant evidence concerning the circumstances of Tchelebi's receipt of the letter, his conversations with Plaintiff regarding the letter, and Rodriguez's knowledge or receipt of the letter. At the very least, the court agrees with Plaintiff that the E-ZPass records may have

impeachment value insofar as they tend to disprove Tchelebi's "sworn deposition testimony that he was working in the hospital on Friday morning." (Pl. Opp'n at 21.)

    4. <u>Other Evidence That May Constitute Hearsay</u>

Defendants' Thirteenth Motion seeks to exclude several exhibits on the grounds that "Plaintiff has not designated [them] as for impeachment or rebuttal purpose." (Defs. Mem. at 19.) Defendants appear to assert that these exhibits would constitute hearsay if they were proffered as substantive evidence, but do not offer any analysis to that effect. The court reserves ruling on Defendants' Thirteenth Motion. Defendants have not pointed to any rule requiring Plaintiff to preemptively designate exhibits as limited to impeachment or rebuttal purposes. Defendants are, of course, free to object at trial if Plaintiff attempts to introduce an exhibit for an impermissible purpose.

## III.  CONCLUSION

For the reasons stated above, Plaintiff's motions <u>in limine</u> (Dkt. 103) and Defendants' motions <u>in limine</u> (Dkt. 106) are GRANTED IN PART and DENIED IN PART, with ruling on certain questions RESERVED until trial.

    SO ORDERED.

Dated: Brooklyn, New York  
      April _8_, 2017

/s Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge