UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

DR. ADDAGADA C. RAO,

      Plaintiff,

  -against-

RAMON RODRIGUEZ and WYCKOFF HEIGHTS
MEDICAL CENTER, INC,

      Defendants.
-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-1936 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

  In this action, Plaintiff Dr. Addagada C. Rao asserts that Defendants Ramon Rodriguez and Wyckoff Heights Medical Center, Inc. ("Wyckoff"), discriminated against him on the basis of race, national origin, and age in violation of federal, state, and municipal law. (See Compl. (Dkt. 1).) The court assumes the parties' familiarity with the factual and procedural background of this action. On April 18, 2017, the court issued an order limiting Plaintiff's potential back-pay damages to a maximum recovery period ending on December 30, 2012, one year after Plaintiff's December 30, 2011, letter to Dr. Mounzer Tchelebi (the "December 30 Letter"). (Apr. 18, 2017, Mem. & Order (Dkt. 118) at 16-17.) Plaintiff now seeks "clarification" as to the order's effect on Plaintiff's claims under the New York City Human Rights Law (the "NYCHRL"). (Pl. Mem. re Dmgs. Under NYCHRL ("Pl. Mem.") (Dkt. 121) at 1.) For the reasons set forth below, the court finds that Plaintiff's back-pay damages under the NYCHRL are subject to the same maximum recovery period as Plaintiff's claims under state and federal law.

**I. PLAINTIFF'S MEMORANDUM**

  Plaintiff submits that, under New York law, "the doctrine of constructive discharge is distinct from a coerced resignation." (Pl. Mem. at 1.) Accordingly, "in the event the jury finds

1

that [the December 30 Letter] was in fact a resignation," Plaintiff requests that he "be permitted to instruct the jury on the New York State common law doctrine of a coerced resignation and the concept of nullification." (Id. at 2.) In addition, should the jury find either that Plaintiff did not resign, or that his resignation was nullified due to coercion, Plaintiff's deposition testimony concerning his "his intentions [] regarding the writing of said letter should not matter." (Id. at 2-3.)

## II. DISCUSSION

The court is conscious of its obligation to "analyze NYCHRL claims separately and independently from any federal and state law claims," recognizing that NYCHRL encompasses a "broader" scope of actionable misconduct. Velazco v. Columbus Citizens Found., 778 F.3d 409, 411 (2d Cir. 2015) (per curiam) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013)). The court finds, however, that, on procedural grounds, Plaintiff failed to properly assert an NYCHRL claim under a theory of "coerced resignation." Moreover, any such claim would fail on the merits as a matter of law. Therefore, the court's reasoning as to a temporal damages limitation applies equally to Plaintiff's claims under the NYCHRL and other sources of law. (See Apr. 18, 2017, Mem. & Order at 16-17.)

### A. Procedural Grounds

The court declines to consider Plaintiff's proposed "coerced resignation" theory at this time because it was not properly introduced in either the Complaint or Plaintiff's prior briefing.

#### 1. The Complaint

The Complaint offers only three allegations that could be pertinent to his proposed theory of coerced resignation:

> (1) on December 29, 2011, Rodriguez told Dr. Percy Erachshaw "that if Rao did not resign, then he, Rodriguez, would fire him."

> Rodriguez also offered discriminatory reasons for seeking
> Plaintiff's departure (Compl. ¶ 32);
>
> (2) starting that same day, "Rao encountered various nurses and
> technicians . . . who expressed surprise, sorrow, and condolences
> to him that he had been fired, when in fact he had not been notified
> by anyone that he had been fired" (id. ¶ 41); and
>
> (3) on January 8, 2012, "Rodriguez [] circulated an email letter to
> the members of the Wyckoff medical staff, except Rao, informing
> them that he had accepted the resignation of Rao as Chief of
> Surgery at Wyckoff, despite the fact that Rao had not resigned his
> position as such, nor had Rao been terminated as such, nor had Rao
> been notified of his 'resignation' as such" (id. ¶ 49).

Notably absent is any mention of the December 30 Letter or Plaintiff's related conversations with Dr. Tchelebi. On the face of the Complaint, Plaintiff appears to allege that Rodriguez fabricated a resignation out of thin air, without any indication that Plaintiff actually sought to resign.

In Plaintiff's legal claims under the NYCHRL, he asserts that both Defendants "intentionally discriminated against" him on the basis of protected characteristics, but does not specify a legal theory or a triggering adverse employment action. (Id. ¶¶ 119-20, 123-24, 127-28.) Given that Plaintiff's other claims explicitly reference an alleged termination of Plaintiff's employment (see, e.g., id. ¶ 98), and given the absence of any allegation that Plaintiff resigned—much less that he specifically resigned under duress—the court finds that the Complaint cannot reasonably be read as asserting a claim for "coerced resignation" under the NYCHRL.

2. Summary Judgment Proceedings

Plaintiff's briefing in opposition to summary judgment similarly failed to provide adequate notice of Plaintiff's proposed "coerced resignation" theory. Defendants' motion argued, in part, that Plaintiff "voluntarily resigned" in the December 30 Letter, and that all of his

3

"claims [therefore] fail as a matter of law" because he "cannot establish that he suffered an adverse employment action." (Wyckoff Mem. in Supp. of Mot. for Summ. J. (Dkt. 83) at 6.) Plaintiff's opposition argued, first, that he did not resign. (Pl. Opp'n to Defs.' Mots. for Summ. J. (Dkt. 88) at 26-27 & n.6.) He next argued that, if the court should find that Plaintiff did resign, any such resignation should "be nullified on account of it constituting a coerced resignation." Id. at 27. This language might suggest a desire to newly assert "coerced resignation" under the NYCHRL, had not Plaintiff gone on to argue that "a claim of coerced resignation can be considered a claim of constructive discharge." (Id. at 27 (emphasis added) (citing Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist., 11 F. Supp. 3d 348, 366 (E.D.N.Y. 2014)); see also id. at 27 n.6 (acknowledging that the "Complaint did not specifically plead constructive discharge as a distinct cause of action," but nonetheless asking that the court "find that a constructive discharge claim was properly plead"); id. at 28 (defining and applying the elements of a constructive discharge claim).)

Admittedly, Plaintiff included a "cf." cite to Bielby v. Middaugh, 120 A.D.3d 896 (N.Y. App. Div. 2014), the most recent New York State authority on coerced resignation. (See Pl. Opp'n to Defs.' Mots. for Summ. J. at 27.) Plaintiff cannot reasonably argue, however, that he sought to introduce a new legal theory by appending a "cf." citation to a paragraph that otherwise addressed a distinct legal claim. See The Bluebook: A Uniform System of Citation R1.2(a) (20th ed. 2015) (explaining that the "cf." signal indicates authority that "supports a proposition different from the main proposition" (emphasis added).)

In any event, Plaintiff never sought to add a "coerced resignation" theory by formally amending the Complaint under Federal Rule of Civil Procedure 15. "[A] party cannot amend [his] complaint simply by alleging new facts and theories in [his] memorandum opposing

4

summary judgment." Petrisch v. HSBC Bank USA, Inc., No. 07-CV-3303 (KAM) (JMA), 2013 WL 1316712, at *10 (E.D.N.Y. Mar. 28, 2013) (alterations, internal quotation marks, and citation omitted)).

3. Motions in Limine

In a final attempt to show adequate notice, Plaintiff notes that his opposition to Defendants' motions in limine clarified Plaintiff's intention "not [to] introduce evidence that he was constructively discharged," but "reserve[d] the right" for Plaintiff "to introduce evidence . . . that any resignation was nullified." (Pl. Mem. in Opp'n to Defs. Mots. in Lim. (Dkt. 109) at 21; see also Pl. Mem. at 2 & n.1.) In the court's view, this is the first time that Plaintiff introduced a theory of "coerced resignation as a basis for nullification" as distinct from a theory of "coerced resignation as establishing a claim of constructive discharge." This one paragraph—devoid of legal authority, without any distinctions between the NYCHRL and state or federal causes of action, and submitted in opposition to a motion in limine less than three weeks before trial—does not establish a sufficient basis for Plaintiff to assert an otherwise novel theory of "coerced resignation" at trial.

B. Substantive Grounds

Even if Plaintiff had adequately pleaded and briefed a theory of "coerced resignation" under the NYCHRL, any such claim would fail as a matter of law. New York courts have held that "[a] resignation under coercion or duress is not a voluntary act and may be nullified." Matter of Mangee (Mamorella), 239 A.D.2d 892, 892 (N.Y. App. Div. 1997) (citing Gould v. Bd. of Educ., 81 N.Y.2d 446, 451 (N.Y. 1993)). For a resignation to be "involuntary" in this way, it must have been compelled by more than simply the threat of termination. In Bielby, the plaintiff agreed to resign and pay restitution for her fraudulent activity "[i]n exchange for" the right to plead guilty to a misdemeanor offense rather than facing more serious criminal charges.

5

120 A.D.3d at 897. In Mangee, the plaintiff "resigned to avoid termination, which would have decreased her retirement benefits." 239 A.D.2d at 892.

Plaintiff has alleged no such collateral consequence for failing to resign. Rather, his case more closely resembles the facts of People ex rel. Spitzer v. Grasso, 54 A.D.3d 180 (N.Y. App. Div. 2008), in which the Appellate Division declined to find a coerced resignation: "Even if there were evidence that Grasso was threatened with discharge[,] . . . Grasso's resignation would not thereby have been rendered an involuntary act that was tantamount to a termination." 54 A.D.3d at 211 (citing Levitz v. Robbins Music Corp., 6 A.D.2d 1027, 1027 (N.Y. 1958) ("Resignation is ordinarily a voluntary act, and the fact that plaintiff was threatened with discharge does not constitute such duress as to render the resignation involuntary.")). A threat of termination, absent material collateral consequences, may be relevant to a claim of constructive discharge, but Plaintiff has disclaimed that legal theory. (Pl. Mem. in Opp'n to Defs. Mots. in Lim. at 21.) Plaintiff's proposed "coerced resignation" theory fails as a matter of law, and he may not assert it at trial.

### III. CONCLUSION

For the reasons stated above, the court DENIES the request in Plaintiff's memorandum of April 26, 2017 (Dkt. 121). Plaintiff is not permitted to assert a theory of "coerced resignation" under the NYCHRL. For the reasons articulated in the court's order of April 18, 2017 (Dkt. 118), Plaintiff's potential back-pay damages—under the NYCHRL and any other cause of action—are limited to a recovery period ending no later than December 30, 2012.

SO ORDERED.

Dated: Brooklyn, New York
May _1_, 2017

/s Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge