UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. ADDAGADA C. RAO,

                      Plaintiff,

      -against-

RAMON RODRIGUEZ and WYCKOFF HEIGHTS
MEDICAL CENTER, INC,

                      Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

14-CV-1936 (NGG) (ST)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Dr. Addagada C. Rao brought this employment discrimination action against Defendants Ramon Rodriguez and Wyckoff Heights Medical Center, Inc. ("Wyckoff"), asserting claims of discrimination on the basis of race, national origin, and age, in violation of federal, state, and municipal law. (See Compl. (Dkt. 1).) On May 11, 2017, after a nine-day trial, the jury returned a defense verdict on all claims. (Jury Verdict (Dkt. 160).) Now before the court is Defendants' application for attorney's fees (the "Fee Application"). (Defs. Appl. for Att'y Fees (Dkt. 163).) For the reasons stated below, the Fee Application is DENIED.

I. **LEGAL STANDARD**

Attorney's fees may be awarded to the prevailing party on claims asserted under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-5; Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1988(b); and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-502(g). "'[A] district court may in its discretion award attorney's fees to a prevailing defendant' only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not [necessarily] brought in subjective bad faith.'" Carter v. Inc. Vill. of Ocean Beach, 759 F.3d 159, 163 (2d Cir. 2014)

1

(quoting Christiansburg Garment Co. v. Equal Empl't Opportunity Comm'n, 434 U.S. 412, 421 (1978)).[1]

Even where "[h]indsight proves" that a plaintiff's allegations are "very weak," attorney's fees will be denied unless the court finds the plaintiff's claims to be "completely without foundation." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 230 (2d Cir. 2004); see also Christiansburg Garment, 434 U.S. at 421-22. The Second Circuit has cautioned that "a court cannot properly consider a claim to be frivolous on its face" if the court previously found "that the plaintiff must be allowed to litigate the claim." LeBlanc-Sternberg v. Fletcher, 143 F.3d 765, 770 (2d Cir. 1998) (citation omitted). In particular, "a claim [may not] properly be deemed groundless where the plaintiff has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law." Id. at 771 (and discussing Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO v. Cty. of Nassau ("AFSCME"), 96 F.3d 644 (2d Cir. 1996)).

## II. DISCUSSION

The court denied Defendants' motion for summary judgment, as well as their motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). (Mar. 30, 2017, Mem. & Order (Dkt. 101); Trial Tr. 1376:24-1377:1.) Defendants submit that the denial of a "Rule 50 motion should not serve as a bar to attorney's fees." (Defs. Reply in Supp. of Fee Appl. (Dkt. 167) at 3.) The only authority they cite for that proposition, however, is Dangler ex rel. Dangler v. Yorktown Central School, 777 F. Supp. 1175 (S.D.N.Y. 1991), a district court case

---

[1] Christiansburg Garment established a standard for Title VII's fee-shifting provision, but that standard has been "interpreted consistently" as applied to Section 1988 and the NYCHRL. Carter, 759 F.3d at 163 & n.1 (discussing Section 1988); McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 428-30 (N.Y. 2004) (commenting that the NYCHRL "attorney's fee provision is indistinguishable from provisions in comparable federal civil rights statutes," and explaining that "[w]here [New York's] state and local civil rights statutes are substantively and textually similar to their federal counterparts, our Court has generally interpreted them consistently with federal precedent").

2

that predates the Second Circuit's ruling in LeBlanc-Sternberg. The court finds the reasoning in Dangler persuasive, but sees no leeway under the clear language in LeBlanc-Stenberg, and therefore denies Defendants' Fee Application.

"In reviewing a Rule 50 motion, all credibility determinations and reasonable inferences of the jury are given deference and we may not weigh the credibility of witnesses." Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 180 (2d Cir. 2016) (citing Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008)). That standard creates a difficult hurdle in cases such as this, in which Plaintiff's discrimination claims rested almost entirely on disputed allegations that Defendant Rodriguez made certain remarks to or about Plaintiff. Most of the witnesses who testified to overhearing those remarks were individuals who had themselves been terminated or demoted, and some had initiated their own private actions against Defendants. Certain witnesses, including Plaintiff himself, seemed to have trouble remembering what, exactly, Rodriguez allegedly said, or to whom he said it. Though certain comments were allegedly made at group meetings, Plaintiff did not produce corroborating testimony from other meeting attendees. Combative or evasive demeanor on the stand further undermined the credibility of certain key witnesses. The court recognizes, however, that a "claim is not necessarily frivolous" merely "because a witness is disbelieved." LeBlanc-Sternberg, 143 F.3d at 770 (quoting AFSCME, 96 F.3d at 652).

Even setting aside questions of credibility, Plaintiff's claims arguably suffered from inadequate evidence of discriminatory intent. Notably, witnesses disagreed with each other over the meaning of Rodriguez's alleged comments. Even if it is true that Rodriguez said Plaintiff's "face looks like an oyster shell," that comment could be interpreted as a comment on Plaintiff's age, race, or national origin, or something else entirely. The term "Indian Mafia" could, in a

3

vacuum, be interpreted as referring to all doctors of Indian descent, but at least one witness testified that the term was a commonly used moniker for a particular tight-knit group of doctors who worked together and supported each other, most of whom were Indian, but who represented only a small proportion of the many Indian staff members at Wyckoff. Meanwhile, Defendants offered multiple legitimate non-discriminatory reasons for seeking Plaintiff's departure,[2] and also highlighted the absence of evidence that Defendants had sought the removal or demotion of other employees on the basis of age, South Asian race, or Indian national origin.

At the close of Plaintiff's affirmative case, Defendants moved for judgment as a matter of law. The court expressed skepticism about the merits of Plaintiff's case, especially with regard to claims asserting race-based discrimination. The court asked Plaintiff whether there has "been evidence here of racial animus . . . beside one alleged comment" more than a year after Plaintiff's departure, "which is usually not enough in these discrimination cases." (Trial Tr. 1168:16-21.) Plaintiff did not offer any additional examples, but emphasized that the comment in question was allegedly made by Rodriguez himself, a key decision maker, and thus constitutes evidence of discriminatory animus. (Id. 1168:22-1169:2.) The court questioned whether "that [was] really credible here" given the "ample evidence that many, many people of Indian and other minority background have been hired or [] remained on staff." (Id. 1169:3-6.)

---

[2] Defense witnesses testified that Plaintiff's private medical practice collected millions of dollars in billings for patients treated at Wyckoff, a non-profit hospital beset by financial difficulties, all while Plaintiff himself was a highly compensated member of the Wyckoff payroll. In his capacity as Chief of Surgery, Plaintiff oversaw a department that was allegedly rife with dubious recordkeeping, disregard for patient safety, and abusive billing practices that redounded to the benefit of Plaintiff's own medical group. When viewed in that light, Plaintiff's claims—which rely on testimony that is, at best, thin, and at worst, contrived—could be construed as vindictive or avaricious. The Second Circuit has emphasized that "fee awards are at bottom an equitable matter, [and] courts should not hesitate to take the relative wealth of the parties into account" when calculating the amount of attorney's fees. Shangold v. Walt Disney Co., 275 F. App'x 72, 74 (2d Cir. 2008) (summary order) (emphasis added) (quoting Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1028 (2d Cir. 1979)). This court is not aware of any authority, however, that would permit such equitable consideration in determining whether fees ought to be awarded at all.

4

Nonetheless, the court reserved ruling on Defendants' Rule 50 motion, and invited Defendants to reassert the motion at the close of evidence. (Id. 1170:1-3.)

At a sidebar later in the trial, the court cautioned Plaintiff that the undersigned was "close to directing a verdict." (Id. 1335:21-22.) At the close of evidence, however, the court denied Defendants' renewed Rule 50(a) motion. (Id. 1376:24-1377:1.) Despite the court's skepticism as to the veracity of testimony from Plaintiff's witnesses, and even as to the integrity of Plaintiff's prima facie case,[3] the court permitted all claims to proceed to a jury verdict. The court was cognizant that judgment as a matter of law is an extraordinary remedy. The court recognized, moreover, that certain among Plaintiff's claims had more support than others, both due to the differential evidence adduced as to various asserted discriminatory motives, and also thanks to the NYCHRL's uniquely plaintiff-friendly standards. As long as at least some of Plaintiff's claims were fit for decision by jury, the court thought it wise to submit all claims for jury review in the first instance, particularly in light of Plaintiff's inability to articulate with certainty which allegedly discriminatory comments supported which bases for discrimination. Cf. Dangler, 777 F. Supp. at 1178 ("Directed verdicts are [] disfavored because they require a retrial if improvidently granted.").

In so doing, the court recognized that, when denying a motion for judgment as a matter of law under Rule 50(a), "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Had the jury found for Plaintiff on any of his claims, Defendants could have moved for judgment notwithstanding the verdict under Rule 50(b). The court will not, at this time, articulate definitive rulings on hypothetical motions, but notes that, with regard to certain among Plaintiff's

---

[3] In denying Defendants' motions for summary judgment before trial, the court "assume[d], without deciding," that Plaintiff had established a prima facie case on all claims. (Mar. 30, 2017, Mem. & Order at 12.)

5

claims, a 50(b) motion would have received serious consideration.[4] LeBlanc-Sternberg brooks no exception, however, declaring that a claim may not be "deemed groundless where the plaintiff . . . has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law." 143 F.3d at 771.

Because the court denied Defendants' motions for summary judgment and for judgment as a matter of law, and because the court lacks evidence that Plaintiff actually acted in bad faith or knowingly presented false testimony, the court is compelled to deny Defendants' Fee Application.

## III. CONCLUSION

For the reasons stated above, Defendants' Fee Application (Dkt. 163) is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
August __, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[4] Had the court done so, Defendants would have a stronger argument in favor of awarding fees. If a court finds that a "plaintiff asserted both frivolous and non-frivolous claims," the court may grant the defendant's fee motion as to reasonable "costs that the defendant would not have incurred but for the frivolous claims." Fox v. Vice, 563 U.S. 826, 829 (2011).